**Marion Albert PRUETT, Petitioner,**

v.

**Morris THIGPEN, Commissioner, Mississippi Department of Corrections, Donald A. Cabana, Superintendent, Mississippi State Penitentiary, and State of Mississippi, Respondents.**

**No. EC84–31–LS.**

United States District Court,
N.D. Mississippi, E.D.

March 21, 1986.

Stephen B. Bright, Atlanta, Ga., William Sebastian Moore, Jackson, Miss., Robert E. Morin, Rockville, Md., for petitioner.

Edwin Lloyd Pittman, Atty. Gen., Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., William S. Boyd, III, White & Morse, Gulfport, Miss., for respondents.

## MEMORANDUM OPINION

SENTER, Chief Judge.

Presently before the court is Marion Albert Pruett's petition for writ of habeas corpus. On November 2, 1981, Marion Albert Pruett was indicted by the Grand Jury of the First Judicial District of Hinds County, Mississippi, for the September 17, 1981, capital murder of Opal H. Lowe, a/k/a Peggy Lowe. Venue was moved to Lowndes County, Mississippi, and in a bifurcated trial, as required by state statute, petitioner was found guilty of the crime of capital murder and sentenced to death. Mr. Pruett perfected a timely appeal to the Mississippi Supreme Court assigning the following as reversible error:

1. The lower court erred in assuming jurisdiction and venue over appellant on the charge of capital murder; in overruling appellant's motion to quash the indictment, directed verdict, and peremptory instruction; and in granting the State's Instruction S–1.

2. The lower court erred in overruling appellant's motion to suppress evidence and admitting confessions into evidence which were illicited from appellant by promises of drugs from authorities.

3. The lower court erred in seating Mr. Sidney Graham (Juror # 8) on the jury and appellant was denied the opportunity to exercise peremptory challenges in an intelligent and knowledgeable manner because of said juror's misstatements during voir dire.

4. The lower court erred in admitting an edited television interview into evidence at the sentencing phase of the trial.

■ The Mississippi Supreme Court denied relief on February 23, 1983, *Pruett v. Thigpen*, 431 So.2d 1101 (Miss.1983). The United States Supreme Court likewise denied Pruett's petition for writ of certiorari. On November 22, 1983, Pruett filed with the Mississippi Supreme Court a petition for writ of error coram nobis. In this petition, Pruett asserted nineteen claims of constitutional error, to-wit:

A. Lack of jurisdiction and constitutional venue.

B. Denial of fair trial due to community prejudice.

C. Failure to excuse for cause a juror prejudiced against petitioner.

D. The death qualification of petitioner's jury.

E. Use of petitioner's involuntary and unconstitutionally obtained statement.

F. Unconstitutional use of unrelated bad acts.

G. Use of inflammatory photographs.

H. Improper closing argument—Guilt-Innocence.

I. Denial of fair trial—Guilt—Innocence.

J. Juror's violation of oath.

K. Consideration of improper aggravating circumstances.

L. Improper limitation of testimony by and cross-examination of mitigating witnesses.

M. Improper instructions and improper jury findings at sentencing.

N. Improper closing argument—sentencing.

O. Denial of fundamentally fair sentencing hearing.

P. Inadequate sentencing report.

Q. Inadequate appellate review.

R. Discriminatory application of the death penalty.

S. Ineffective assistance of counsel.

The state supreme court refused to reach the merits of this petition, relying on petitioner's failure to raise these claims on

direct appeal. Thereafter, Pruett filed his petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254 asserting as grounds for relief the same nineteen claims which he brought before the Mississippi Supreme Court in his petition for error coram nobis review. On November 24, 1984, we denied the state's motion to dismiss this petition on the grounds of procedural forfeiture due to the Mississippi Supreme Court's invocation of a newly constricted scope of error coram nobis review and thereby concluded that for purposes of federal review, petitioner's claims must be considered to have been effectively exhausted as required by statute and decisional law.[1]

### 1. *The Facts.*

At trial, the details of this capital offense were revealed substantially through the sworn testimony of petitioner himself. On the morning of September 17, 1981, Marion Albert Pruett entered the branch office of Unifirst Savings & Loan Association for the purpose of committing an armed robbery. During the progress of the armed robbery, petitioner took Peggy Lowe as a hostage in an effort to make his escape. At gunpoint, Mrs. Lowe and the robbery proceeds were taken to Mrs. Lowe's car in which petitioner drove to another area in the Metro Center Shopping Mall parking lot. He then moved Mrs. Lowe into his own car, drove down several adjacent streets, and then to Interstate #20 on which he continued approximately one hundred miles to Sumter County, Alabama, adjacent to the Mississippi—Alabama state line. For the duration of this ride, Pruett forced Mrs. Lowe to remain on her knees on the floorboard of his car's passenger side with her shoulders, arms, and head downward on the seat. After entering the State of Alabama, Pruett left the interstate highway, drove on a gravel road for a distance, and then turned onto a lightly traveled dirt road where he stopped. The armed petitioner then led Mrs. Lowe into the surrounding woods where he forced her to disrobe except for her underclothes for the purpose of keeping her under his control and preventing her escape. Pruett then went back to his car, administered a shot of cocaine to himself, and returned to check on his prisoner. He discovered that Mrs. Lowe had moved from the area. He then, by his own sworn testimony, instructed her to get on her knees, put her face down, and repeat her husband's telephone number so that he could be called. Mrs. Lowe was in the process of complying with these instructions when petitioner shot her in the back of the head at close range. Pruett was apprehended on October 17, 1981, in the area of Stratford, Texas, when Texas state troopers stopped his vehicle for a speeding violation. A routine license check revealed that Marion Albert Pruett was wanted for armed robbery by the State of Mississippi.

### II. *The Merits.*

█ The scope of habeas corpus review is constricted by the interests of comity and federalism. The purpose of this limited scope of inquiry is to require the defendant to focus on the trial court wherein any and all errors which affect the legality of a conviction should be presented and a record thereon developed. On direct ap-

---

1. In our view, prior to its decision in *Edwards v. Thigpen,* 433 So.2d 906 (Miss.1983), the Mississippi Supreme Court had addressed with some consistency the merits of death penalty cases on petitions for error coram nobis whether or not said issues had been raised on direct appeal. *Edwards* announced a new rule wherein claims not raised on direct appeal would not be considered on error coram nobis. At the time of petitioner's direct appeal, however, this rule had not been announced. We held that petitioner may have reasonably relied on the then existing "two appeal" procedure by advancing some errors on direct appeal and withholding others for subsequent assertion on error coram nobis, and, therefore, application of the new rule would have unjustly penalized petitioner.

As the state has demonstrated some confusion over the effect of our ruling, we reiterate that it applies only to procedural defaults occasioned as a result of the Mississippi Supreme Court's change in policy regarding coram nobis relief. Our holding does not extend to a default occurring at the trial court level. Thus, this court will, of course, acknowledge procedural defaults which have occurred at trial through the failure to make appropriate contemporaneous objections or requests of the trial judge. *See Johnson v. Thigpen,* 623 F.Supp. 1121 (S.D.Miss.1985).

peal, the state should be given the opportunity to correct the errors of its own courts before these are presented to the federal courts in a habeas proceeding. This allows the state courts the full opportunity to develop a factual record on matters claimed as error and to correct the error if appropriate. With this basic premise in mind, the court now turns to the merits of Marion Albert Pruett's petition for habeas corpus relief. Having found no need for further evidentiary display, we base our discussion on the record before us.

## A. LACK OF JURISDICTION.

■ Petitioner alleges that the State of Mississippi's assertion of jurisdiction over a crime which was committed in another state violated his rights under the sixth, eighth, and fourteenth amendments to the United States Constitution. It is uncontested that the actual murder of Peggy Lowe took place wholly within the State of Alabama.

Mississippi's assertion of jurisdiction in this action was predicated on Miss.Code Ann. § 99–11–17 (1972), which provides:

Where an offense is commenced in this state and consummated out of it, either directly or by the accused or by any means or agency procured by or proceeding from him, he may be indicted and tried in the county in which such offense commenced or from which such means or agency proceeded.

*Id.*

Petitioner was indicted, convicted, and sentenced to death for violating Miss.Code Ann. § 97–3–19(2)(e) which defines capital murder as "the killing of a human being without the authority of law by any means or any manner when done ... by any person engaged in the commission of rape, burglary, kidnapping...." A killing is committed during the commission of a felony when there is "no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming *one continuous transaction.*" *Pickle v. State*, 345 So.2d 623 (Miss.1977) (emphasis added). Under the Mississippi

Supreme Court's definition of capital murder, the res gestae of the underlying crime begins where an indictable attempt is made and ends where the chain of events between the attempted crime or completed felony is broken. *Id.* at 625–26.

Petitioner has argued that the murder was not accomplished during the course of a kidnapping but rather after the abduction had ended. Upon an adequate and carefully developed factual record, the Mississippi Supreme Court determined that, even taking appellant's testimony as true, Pruett never relinquished control over his victim and therefore never abandoned the kidnapping. Petitioner has offered no new evidence with which to refute the inescapable conclusion that there was "no break in the chain of events leading from the initial felony to the act causing death." *Pickle*, 345 So.2d at 626.

The crime of capital murder is one discrete offense. Petitioner would have us dissect this offense into two separate crimes in an effort to defeat the jurisdiction of the State of Mississippi. Although there are two distinct components, both of which must be present to sustain a capital murder charge, under Mississippi law, the crime of capital murder was commenced in Hinds County, Mississippi, when Mr. Pruett forcefully abducted Peggy Lowe from her place of employment and was consummated in Alabama when petitioner shot decedent in the back of the head. Thus, Mississippi's criminal venue statute has been satisfied inasmuch as a crime was commenced in this state which was consummated in another.

■ Petitioner argues that regardless of Mississippi's interpretation of its laws, the sixth amendment acts as a constraint on a state's wrongful assertion of jurisdiction and concludes that Mississippi's invocation of jurisdiction violates petitioner's right to a trial in the "district wherein the crime shall have been committed." It is axiomatic that "a sovereign has jurisdiction to try an offense where only a part of that offense has been committed within its boundaries." *Ford v. U.S.*, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1922); *Leonard v. U.S.*,

500 F.2d 673 (5th Cir.1974). Petitioner claims, however, that double jeopardy concerns serve to limit a state's jurisdiction over a defendant. That Pruett could have been subjected to prosecution in both Mississippi and Alabama under Mississippi's interpretation of its jurisdictional statute should, according to petitioner, insulate him from prosecution by the State of Mississippi. This double jeopardy argument has been squarely rejected by the United States Supreme Court in *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). In *Heath*, the defendant hired two men to kill his wife. The two men kidnapped defendant's wife from her home in Alabama and murdered her in Georgia. Defendant pled guilty to "malice" murder in a Georgia trial court in exchange for a life sentence. Subsequently, he was tried and convicted of murder during a kidnapping and was sentenced to death in an Alabama trial court. The Supreme Court held that under the dual sovereignty doctrine, successive prosecutions by two states for the same conduct are not barred by the double jeopardy clause. Consequently, even if Pruett had been subjected to prosecution in Alabama, such prosecution would not subject him to double jeopardy. The dual sovereignty doctrine provides that when a defendant in a single act violates the peace and dignity of two sovereigns by breaking the laws of each, he has committed two distinct "offenses" for double jeopardy purposes. *Heath*, 474 U.S. at 87, 106 S.Ct. at 437, 88 L.Ed.2d at 394. Having found no violation of the sixth amendment, Pruett's claim of unconstitutional assertion of jurisdiction must fail.

### B. DENIAL OF FAIR TRIAL DUE TO COMMUNITY PREJUDICE.

■ Petitioner alleges that the failure of the trial court to take steps to minimize overwhelming community prejudice against petitioner after it became apparent that he could not receive a fair trial and sentencing in the county in which the case was tried operated to deny petitioner a fair trial in violation of his rights guaranteed under the fifth, sixth, eighth, and fourteenth amendments to the Constitution. Prior to trial, defense counsel filed a written motion to change venue asserting that the intense and prejudicial pretrial publicity about the crime and petitioner's other activities would prevent a fair trial. At a hearing on his motion, the state proffered no objection to the change of venue. On February 11, 1982, the trial court, by written order, granted a change of venue and moved the case to Columbus, Lowndes County, Mississippi. Petitioner for the first time in his application for coram nobis relief claimed that he should have been granted another change of venue from Lowndes County. There was no request or suggestion that venue should be changed from Lowndes County at the time of trial. No motion was filed prior to trial nor was an objection interposed at the time the jury was empanelled. The record clearly reveals complete acquiescence to Lowndes County venue by the petitioner.

It is the Mississippi Supreme Court's firm rule that before an issue may be assigned and argued on appeal, it must first have been presented to the trial court. Where the issue was not timely presented below, it will be deemed waived and thus be procedurally barred. *Read v. State*, 430 So.2d 832, 838 (Miss.1983). *See also* R. 6(b), Miss. Supreme Court Rules. A trial judge cannot be put in error on a matter which was not presented to him for decision. *Ponder v. State*, 335 So.2d 885 (Miss. 1976). It is this court's conclusion that Mr. Pruett has forfeited this claim by virtue of the Mississippi Supreme Court's clearly established contemporaneous objection rule. Having shown no cause or prejudice sufficient to override the effect of this procedural default, petitioner cannot now complain of constitutional violation. Further, this court is unable to find the first case wherein either the Mississippi Supreme Court, the United States Court of Appeals for the Fifth Circuit, or the United States Supreme Court has ever held that a trial court abused its discretion in failing to *sua sponte* change the venue of a particular proceeding. We submit that for a trial

court to do so would be a very risky business indeed.

■ Petitioner also contends that the failure of the trial court to require individually sequestered voir dire was error of constitutional proportions. The decision of the trial judge on this issue is discretionary, and this court cannot say that the judge's decision not to require individually sequestered voir dire amounts to a clear abuse of discretion.

## C. FAILURE TO EXCUSE BIASED JUROR FOR CAUSE.

Petitioner asserts that the trial court's refusal to excuse venireman Ronald Smith for cause violated his rights under the sixth and fourteenth amendments inasmuch as said venireman was prejudiced against Mr. Pruett, thereby depriving Mr. Pruett of an impartial jury. The pertinent portions of the record on voir dire evidence Juror Smith's bias:

BY MR. BINDER: All right. Now, a Defendant looks for someone who is impartial. In the case, as the Judge has told you, it is a, you might say, two-type trial. If the Defendant is found guilty, there's another hearing about whether to give him life or the death penalty. That's what all this talk all afternoon has been about. Now, from what you've read in the newspaper about Mr. Pruett or what you've heard on the T.V., would you—any of you feel uncomfortable if the situation were reversed and you were sitting where he is sitting and he was sitting in judgement on you, if you will, knowing what you have read? Any facts there that might be recalled to your attention if this trial continues that might make you a little biased against him. I want you to search your hearts,—we're in and about serious business—and you tell me if there is something that you read about the facts of this case that will make you a little uncomfortable or a little biased against Mr. Pruett if you sat in judgement on him.

(ONE JUROR RAISED HIS HAND.)

BY MR. BINDER: You have a little bad feeling about it?

BY MR. RONALD GEORGE SMITH: Only just from what I read.

BY THE CLERK: Mr. Smith—

BY MR. BINDER: And did it have a—what you read, did it prejudice you a little against him?

BY MR. SMITH: Just to find out if it's the truth.

BY MR. BINDER: In other words, you're telling the Judge and myself that if we went to trial and you were a selected juror on Mr. Pruett's case, the truth of it is that he'd have to put on a little evidence based upon what you've read to kinda prove his worth to you because you've been—you've heard some things about him, haven't you?

BY MR. SMITH: Right.

BY MR. BINDER: And you're just being as honest about it as you know, aren't you?

BY MR. SMITH: Yes, sir.

R. 586–87.

At the conclusion of the questioning of Ronald George Smith, defense counsel objected for cause. The court reserved a ruling on the objection. During the jury selection conference in chambers, the *prosecution* objected for cause to Juror R. Smith:

BY MR. PETERS: The State would challenge Ronald George Smith, Juror No. 1, based upon the fact that he said he would be prejudiced and the Defense would have to put on evidence in order to remove his prejudice from his mind.

BY THE COURT: I didn't interpret his testimony in that regard. He later stated he would not. Go ahead.

BY MR. PETERS: Your Honor, if he did say that, would it be the Court's opinion that he should be excused because I'm quite confident that he said that and I would be willing for the court reporter to—

BY THE COURT: I was—I listened— he was asked—he was asked if he would be uncomfortable and then he—he stated

that he had read it and it had influenced him, but then he stated that he would be able to set that aside. It will be denied. R. 616.

■ The state now argues that under 28 U.S.C. § 2254, the question of a challenge to a prospective juror for bias is a "factual issue" and, therefore, a reviewing court must accord the state court's determination a "presumption of correctness." *Summer v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). This presumption disappears, however, if the factual determination is not fairly supported by the record. 28 U.S.C. § 2254(d)(8).

■ The trial court's determination that Juror Ronald Smith would be able to "set aside" his opinion and render an impartial verdict was patently erroneous and clearly not supported by the record. Regrettably, it appears that the state court judge confused the responses of Juror Ronald Smith with those of another. Ronald Smith's final reply to the question, would Mr. Pruett be required "to put on a little evidence based upon what you've read to kinda prove his worth to you" was "Right."

Under *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), in order to succeed on a claim of juror bias, a habeas petitioner must show the actual existence of an opinion in the mind of the juror as will raise a presumption of partiality:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved.... To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impressions or opinions and render a verdict based on the evidence presented in court.

*Id.* at 722–23, 81 S.Ct. at 1642–43.

In the instant case, the conclusion is inescapable that Ronald Smith had formed an opinion as to the petitioner's guilt. There is absolutely no indication in the record that he would have been able to lay aside his opinion and render a verdict based on the in-court evidence. Ronald Smith's response to defense counsel's questioning demonstrated that he would have required Mr. Pruett to present evidence sufficient to overcome his belief in the defendant's guilt. Clearly, this violates the standard of impartiality contemplated by *Irvin v. Dowd. See also Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982) (due process means a jury capable and willing to decide the case solely on evidence before it); *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) (same).

■ The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial and indifferent jurors. The failure to accord an accused a fair hearing violates even the most minimal standards of due process. *Irvin v. Dowd,* 366 U.S. at 722, 81 S.Ct. at 1642. The principal way in which this right to trial by indifferent jurors is secured is through the system of challenges exercised during voir dire. In a direct appeal setting, an inhibition of the right to challenge peremptorily or for cause is deemed reversible error without a showing of actual prejudice. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *U.S. v. Boyd,* 446 F.2d 1267, 1275 n. 27 (5th Cir.1971). Further, on direct appeal, where a refusal to strike for cause was erroneous, such error cannot be cured by the exercise of a peremptory challenge since the effect would be a reduction of the number of peremptory challenges available to a defendant which would result in a substantial impairment of a constitutional right. *Boyd,* 446 F.2d at 1275. In the direct appeal context, the leading case on this issue is *U.S. v. Nell,* 526 F.2d 1223 (5th Cir.1976), which instructs that:

> The jury box is a holy place. To ensure that those who enter are purged of prejudice, both challenges for cause and the full complement of peremptory challenges are crucial. Therefore, as a general rule, it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of

abridging the right to exercise peremptory challenges.

Id. at 1229.

The extent to which *Nell* is applicable to federal habeas proceedings is an issue unresolved in the Fifth Circuit. In *Willie v. Maggio,* 737 F.2d 1372 (5th Cir.1984), a defendant in a habeas proceeding claimed that he was denied the right to an impartial jury because he was required to use two peremptory challenges against jurors who allegedly should have been excused for cause. The Fifth Circuit concluded that the suspect jurors were not in fact biased. In a footnote, the court stated: "Because we do not find that the trial court abused its discretion under *Nell,* we do not find it necessary to consider the extent to which *Nell* is applicable to federal habeas proceedings." *Id.* at 1275. *See also Celestine v. Blackburn,* 750 F.2d 353 (5th Cir.1984) (In § 2254 proceedings, the question of whether impairment of right to exercise a full allotment of challenges contravenes sixth amendment right to an impartial jury remains an open one; court found subject juror to be ultimately impartial).

Before proceeding further on this issue, this court must stress the peculiarity of the factual scenario in which the claim herein arises. The trial court judge was mistaken as to the identity of Juror Ronald Smith, an unfortunate but foreseeable consequence of an extended and prolonged voir dire. The prosecution as well as the defendant objected for cause to Juror Smith due to his inability to lay aside his opinion. Although the defendant exhausted all of his available peremptory challenges in empaneling the jury, at the time of Juror Smith's tender, defense counsel had not utilized any of his challenges.

This court is bothered by defense counsel's failure to utilize one of his peremptory challenges to excuse this juror. We are aware of the line of cases issuing from the Mississippi Supreme Court which hold that the trial court cannot be put in error for failure to properly sustain a challenge for cause if the defendant has not exhausted his peremptory challenges. *See, e.g., Capler v. City of Greenville,* 207 So.2d 339 (Miss.1968); *Rush v. State,* 278 So.2d 456 (Miss.1973). We note, however, that in all of these cases, the defendant's peremptory challenges remained unused at the conclusion of the selection process. Here, Pruett's counsel in the end exhausted all available peremptory challenges. Further, this court finds distinguishing the fact that in the instant case, although defendant objected for cause during the actual voir dire examination, it was the prosecutor who, during the jury selection conference in the judge's chambers, made the objection to Juror Smith on the basis of bias.

 Whether or not this is an appropriate situation for the application of the state's bar is not, however, properly before this court. Although the Mississippi Supreme Court in its denial of error coram nobis review did in fact comment on the merits of many of petitioner's claims, it did not choose to do so in relation to this claim. Although indicating that other of Pruett's claims were barred by the procedural default of failure to raise a contemporaneous objection, the court did not raise counsel's failure to utilize one of his peremptory challenges to excuse Juror Smith as a bar to review of this claim. Neither did the state at any time raise this contention in either of its two briefs before this court on the habeas petition. This federal court does not now sit as a super state supreme court but, rather, sits only to address issues of constitutional proportion. When the state court does not indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the state by entertaining the claim. *Booker v. Wainwright,* 703 F.2d 1251 (11th Cir.1983); *Sassoon v. Stynchcombe,* 654 F.2d 371 (5th Cir.1981). Further, Fifth Circuit precedent instructs that a state will waive its claim of procedural default by defendant if that issue is not raised at some point in the district court proceedings. *Washington v. Watkins,* 655 F.2d 1346, 1348 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). *See also Wiggins v. Procunier,* 753 F.2d 1318 (5th Cir.1985). We have, for previously discussed reasons,

considered Mr. Pruett's claims to have been exhausted. The Mississippi Supreme Court failed to raise this procedural default when it addressed the petition for error coram nobis review. Similarly, the state failed to raise this issue in any form at any time during the habeas proceedings before this court. Accordingly, we are constrained to reach the merits of petitioner's claim and therefore proceed to do so.

This court has concluded that Ronald Smith was not an indifferent and impartial juror as contemplated by *Irvin v. Dowd* and its progeny. Whether or not the participation in jury deliberations of a juror who should have been excused for cause under the circumstances of this case warrants habeas corpus relief is the issue now before this court.

 The Fifth Circuit addressed the consequences of the failure to excuse for cause an allegedly biased juror on a habeas petition in *Passman v. Blackburn,* 652 F.2d 559 (5th Cir.1981). Although demonstrating initial bias, the juror subsequently stated that she "believed she could be impartial." The court held that the failure to excuse this juror for cause did not rise to constitutional dimensions. *Id.* at 567. To warrant habeas relief, the basis for disqualification must be so prejudicial as to deprive the petitioner of due process. In support of this proposition, the Fifth Circuit cited *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), which states that the mere existence of a preconceived notion of guilt without more is insufficient to rebut the presumption of impartiality. As long as the juror demonstrates an ability to lay aside his opinions, his initial bias cannot form the basis of a challenge for cause. Under the facts *sub judice,* this crucial ability was not evidenced. In fact, Juror Smith affirmatively stated that petitioner would be required to "prove" something.

The rationale of *Passman* was followed in *Sudds v. Maggio,* 696 F.2d 415 (5th Cir.1983), also a habeas proceeding wherein a challenge for cause was denied. The suspect juror stated that her nephew was a state trooper and that she had a tendency to "lean toward policemen" in matters of testimony. However, again this juror stated that she could evaluate the testimony impartially. The court held that the denial of a challenge for cause did not result in fundamental unfairness, and thus habeas relief was unwarranted. A refusal to grant a challenge for cause does not provide the basis for habeas relief unless the disqualifying fact was so prejudicial that the refusal deprived petitioner of a fundamentally fair trial.

 In both *Passman* and *Sudds,* the court concluded that the "disqualifying fact" at issue did not render the respective trials fundamentally unfair inasmuch as the suspect jurors in each case stated that they would be able to lay aside any preconceived opinion and render an impartial verdict. Juror Smith, on the other hand, indicated that petitioner would be required to prove something to him. Due process at a minimum requires that a jury be "capable and willing to decide the issue solely on the evidence before it." *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). It is this court's firm conclusion that the violation of petitioner's due process right rendered his trial fundamentally unfair. *See Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (most minimal due process requires impartial jurors); *Rogers v. McMullen,* 673 F.2d 1185, 1189 (11th Cir.1982) (state criminal who can demonstrate that a member of the jury which heard his case was biased is entitled to habeas relief). The participation in jury deliberations over objection from both the defendant and the state of an admittedly biased juror constitutes error of constitutional dimension recognizable in a habeas proceeding.

In compliance with the Fifth Circuit's rule requiring the district court to set forth its findings of fact and conclusions of law upon which its decision to either grant or deny the writ is based, *Willie v. Maggio,* 737 F.2d 1372, 1377 (5th Cir.1984), we proceed to analyze the remainder of petitioner's claims.

## D. PROSECUTION–PRONE JURY.

█ Petitioner contends that the jury which convicted him was selected by a procedure which excluded persons who expressed doubts about imposing the death sentence in any case. This systematic exclusion of this sizeable and distinct group from the guilt—innocence phase of the trial, petitioner asserts, denied him a fair and impartial jury representing a cross-section of the community.

In support of this contention, petitioner cites the Eighth Circuit's decision in *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985) (en banc), *cert. granted sub nom, Lockhart v. McCree*, 474 U.S. 816, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985). *Grigsby* is directly contrary to established Fifth Circuit precedence. *See, e.g., Watson v. Blackburn*, 756 F.2d 1055 (5th Cir.1985); *Knighton v. Maggio*, 740 F.2d 1344 (5th Cir.1984), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984); *Sonnier v. Maggio*, 720 F.2d 401 (5th Cir.1983); *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). More importantly, petitioner failed to raise this specific claim at the trial court level and has demonstrated neither cause nor prejudice for the default. For this reason, Pruett's claim must fail.

## E. USE OF UNCONSTITUTIONALLY ELICITED STATEMENTS.

█ Petitioner urges that the admission of his uncounseled statements elicited as a result of improper inducements prior to trial violated his rights under the fifth, sixth, eighth, and fourteenth amendments. Prior to trial, petitioner made a number of incriminating statements about the incident and eventually directed police authorities to the body of the decedent. Petitioner moved to suppress these statements as well as their fruits and moved to quash the indictment. Within the motion, it was asserted that the inculpatory statements were elicited as a result of improper inducements made by police authorities that if petitioner showed them where decedent's body was, he would be provided with drugs.

During the suppression hearing, Detective O.T. McAlpin testified as follows:

Q. At the time he made admissions to you and Detective Monroe and Detective Jordan, had you or any other officers extended to Marion Pruett any promise of leniency or hope of reward in exchange for giving such an admission?

A. No sir.

R. 239.

In testimony given subsequent to the instant trial during a suppression hearing in an Arkansas proceeding against Pruett, Detective McAlpin stated: "We agreed not to charge him if he would show us where the body was at." Tr. 579, 580–81, of Cause No. Cr. 82–226 (Aug. 9, 1982). This contradictory statement was made in August of 1982, three months after the Mississippi trial had concluded.

Any criminal trial use against a defendant of his involuntary statement is a denial of due process of law "even though there is ample evidence aside from the confession to support the conviction." *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). A confession in order to be admissible must be free and voluntary, that is, must "not be obtained by any direct or implied promises, however slight, nor by the execution of any improper influence.... A confession can never be received in evidence where the prisoner has been influenced by any threat or promise...." *Bram v. U.S.*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). *See also Shotwell Mfg. Co. v. U.S.*, 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963). Promises of leniency may constitute coercion so that statements made in response thereto may be deemed involuntary. *Harris v. Beto*, 367 F.2d 567 (5th Cir.1966).

Under *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), an evidentiary hearing in a habeas matter is required where the prisoner's application for habeas corpus contains allegations, not frivolous or incredible, of newly discovered evidence relevant to the constitutionality of his detention.

Petitioner now contends that the statement made by Detective McAlpin in Arkansas constitutes new evidence which would justify a hearing on the issue of whether or not petitioner's confessions were unconstitutionally elicited. In the suppression hearing, petitioner alleged only that he was promised drugs in return for divulging to government authorities the location of the body. At no time during the suppression hearing did the issue of leniency arise. Petitioner never alleged during the proceeding that Detective McAlpin or any law enforcement officer ever indicated to petitioner that his confession would result in the dropping of the Mississippi charges pending. Further, and most persuading is the testimony of petitioner regarding his decision to show officers the location of the body:

> Q: Now what made you decide to tell them where the body was? Did they beat you?
>
> A: No sir.
>
> Q: Well it was your own decision, wasn't it?
>
> A: Yes sir.

On cross-examination, Mr. Pruett was asked:

> Q: Why did you make that decision? Was it because you wanted to help this family find the body?
>
> A: I made the decision at the end, Mr. Peters, because yes, I wanted the family to be able to bury Mrs. Lowe and give her a Christian burial, and her grandchild was fixing to come and she never got to see it and that did weigh heavy on my mind. It overrode the drugs I was wanting.

R. 935. This line of testimony was repeated and expanded. R. 935–939. The Mississippi Supreme Court in deciding the voluntariness issue stated:

> The personal sworn testimony of appellant as the only defense witness in the guilt phase of the trial is inconsistent with his contention in the motion to suppress. He testified that the reason he finally decided to lead officers to Mrs. Lowe's body was so that her family could give her a Christian burial. His testimo-

ny was positive that this decision to do this was not based on any promises whatever from anyone.

*Pruett v. State*, 431 So.2d 1101 (Miss.1983).

█ A state court's finding that a defendant's confession was voluntary precludes federal habeas relief unless it can be found that the state record did not fairly support the finding of voluntariness. *Casias v. Beto*, 459 F.2d 54 (5th Cir.1972); *Gibbs v. Warden of Georgia State Penitentiary*, 450 F.Supp. 242 (M.D.Ga., 1978), *aff'd*, 589 F.2d 1113 (5th Cir.1979). Both the trial court and the Mississippi Supreme Court found Pruett's confessions to be the product of a free will and rational mind.

█ Pruett's own testimony at trial provides ample evidence of voluntariness. Further, Pruett never affirmatively stated that the alleged promises of leniency were ever made. He merely reiterated that he was promised cocaine in return for divulging the location of the body. Thus, the "new evidence" is irrelevant. The transcript of the August, 1982, Arkansas proceedings reveals that Detective McAlpin continued to deny that any promises of drugs were ever made to Pruett. This claim is meritless.

## F. UNCONSTITUTIONAL USE OF UNRELATED BAD ACTS.

█ Petitioner asserts that the admission at trial of testimony concerning unrelated criminal activity which was in no way related to the crime for which he was indicted was inflammatory and prejudicial and deprived him of his rights to a fair determination of guilt or innocence in violation of the fifth, eighth, and fourteenth amendments. A summary of the allegedly improper testimony follows:

(a) Special Agent Covington testified that petitioner was indicted on federal charges based on fingerprint results obtained in connection with the state trial. R. 734. Reference was later made to petitioner's efforts to have federal charges consolidated so that he could be sentenced to death in Mississippi. R. 800.

(b) A police officer testified that petitioner admitted serving in federal prison before. Therefore, the officer believed the petitioner understood his rights prior to interrogation. R. 794.

(c) The jurors were told that a particular name was only one of the aliases petitioner used, R. 765, and that his fingerprints were already on file with the Federal Bureau of Investigation before the homicide at issue was committed. R. 729.

(d) A police officer testified that when petitioner was arrested over a month after the offense, he had syringes and other drug paraphernalia in his car. R. 778. Testimony also indicated that property from an unconfirmed California automobile theft was recovered from petitioner's automobile. R. 787.

(e) Petitioner was cross-examined concerning charges on four additional murders in New Mexico, Colorado, and Arkansas, R. 928, five pending bank robbery charges, R. 928, and robbery charges in Seattle, Washington; Tallahassee, Florida; Corpus Christi, Texas; Jackson, Mississippi, and Pittsburg, Pennsylvania. R. 928.

(f) Petitioner was cross-examined about a juvenile adjudication. R. 927.

(g) Petitioner was also cross-examined concerning prior bad acts and propensity for violence:

(1) It was brought out that petitioner had kidnapped people in several previous bank robberies, R. 963, and that he had killed three to four people in other robberies. R. 966–67. Within one month of the homicide in issue, petitioner had been charged with four additional killings. R. 928–29.

(2) Petitioner was also cross-examined concerning his involvement in the Witness Protection Act program and whether he had committed perjury. R. 958.

(3) Concerning petitioner's propensity for violence and threat which he posed to society, during its case in chief, the prosecution introduced testimony that, according to the National Crime Information Center, petitioner was "not [to be] taken alive." R. 786. The witness further stated that a $200,000 cash bail had been set. R. 786. Later, on cross-examination, petitioner was extensively questioned about whether he intended to remain in jail or instead planned to escape. R. 946.

The cumulative effect of the admission of extrinsic acts in this case is overwhelming and most assuredly prejudicial. However, the sole objection made to the admission of the above extrinsic acts evidence was to Special Agent Covington's testimony that petitioner was indicted on federal charges. Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), federal review is precluded if the petitioner failed to preserve his objection at the trial court stage. Mississippi's contemporaneous objection rule is well established and is effective to procedurally bar from review claims arising from errors to which no objections were made. Petitioner complained for the first time on application for petition of error coram nobis that the introduction of bad acts testimony violated his fourteenth amendment rights. In failing to object to the allegedly erroneous admission of the extrinsic acts, petitioner has waived his right to assert this claim absent a showing of cause and prejudice. *Mendiola v. Estelle*, 635 F.2d 487 (5th Cir.1981). Petitioner has presented no facts upon which a showing of cause can be made.

■ As to the allegedly erroneous admission of Agent Covington's testimony regarding the federal charges against Pruett to which a timely objection was made, this court is governed by the mandate of *Porter v. Estelle*, 709 F.2d 944 (5th Cir.1983), which instructs that the erroneous admission of prejudicial testimony does not justify habeas corpus relief unless it is "material in the sense of a crucial, critical highly significant factor," and results in a denial of fundamental fairness. Based on the magnitude of evidence against Mr. Pruett, we cannot conclude that this admission, insignificant when compared to the evidence offered by petitioner himself, rendered his trial fundamentally unfair. Accordingly, we find this claim to be without merit.

### G. USE OF INFLAMMATORY PHO-TOGRAPHS.

Petitioner asserts that the admission of photographs of the skeletal remains of the victim constitutes error of constitutional proportion resulting in a fundamentally unfair trial. In reiterating the standard of review of evidentiary matters in a habeas setting, we note that the admission at issue here was not "material in the sense of a crucial, critical, highly significant factor." *Porter*, 709 F.2d at 557. Upon examination of the subject photographs, we do not find them to be inflammatory, and their introduction into evidence was not so critical as to deny Pruett a fundamentally fair trial, especially considering the overwhelming evidence of guilt introduced by petitioner himself. *See Nettles v. Wainwright*, 677 F.2d 410, 415 (5th Cir.1982).

### H. IMPROPER CLOSING ARGUMENT AT GUILT–INNOCENCE PHASE.

Petitioner claims that the district attorney's argument was constitutionally improper. Citing numerous examples of alleged prosecutorial misconduct,[2] petitioner asserts that such behavior in a capital trial goes beyond the limits of fundamental fairness. These claims, however, are insulated from review inasmuch as no objection was made at trial to any of the arguments now challenged. The Mississippi Supreme Court has consistently held that in order to preserve improper argument for appellate review, a contemporaneous objection must be recorded. *See, e.g., Hill v. State*, 432 So.2d 427 (Miss.1983); *Coleman v. State*, 378 So.2d 640 (Miss.1979). Having produced no evidence of either cause or prejudice,

petitioner's claim is barred by the mandate of *Wainwright v. Sykes.*

### I. DENIAL OF DUE PROCESS–GUILT PHASE.

Petitioner asserts that he was denied a fair trial and fair sentencing hearing because of the cumulative effect of errors heretofore discussed and because of spectator misbehavior.[3]

For the reasons set out above, we have found all but one of Pruett's claims to be without merit. Consequently, those meritless claims cannot now be relied upon to preface cumulative error of constitutional proportion.

### J. VIOLATION OF JUROR'S OATH.

Petitioner alleges that his rights to a reliable sentencing determination and to intelligently utilize his full array of jury challenges were violated when the trial court failed to vacate the sentence of death after it discovered that one of the jurors did not respond in a truthful manner during voir dire. In support of this contention, petitioner points to Juror Graham's statement during voir dire that he would not under any circumstances impose a penalty of death. Consequently, in reliance upon Juror Graham's unambiguous statement, petitioner did not exercise his right to peremptorily challenge this juror. In fact, petitioner continues, Juror Graham concurred in the sentence of death in direct contradiction to his statement under oath and thereby violated petitioner's constitutional rights.

Suffice it to say that Juror Graham's presence on the jury resulted from the prosecution having confused the identity of veniremen. When the state realized its mistake in selecting Graham, although he

---

2. Petitioner alleges that the prosecutor exacerbated the prejudice created by the introduction of the pictures in his closing argument to the jury by urging the jurors to compare the decedent's appearance when she was living to the photographs of the skeletal remains; by questioning Mr. Pruett's religious beliefs while asserting his own; by asserting that defense counsel regretted his appointment to represent Mr. Pruett and knew Mr. Pruett would be convicted; and by contending that Mr. Pruett should be

convicted because of his assertion of his fifth amendment rights during cross-examination.

3. In addition to the errors and prosecutorial misconduct otherwise alleged herein, the petition describes the sobbing and crying in the courtroom of spectators and law enforcement personnel, characterizations by witnesses of evidence, and the applause which greeted the verdict of guilty and sentence of death.

was definitely opposed to the death penalty, the prosecutor requested the trial court to allow him to amend his jury striking or permit an alternate to sit in Mr. Graham's place. The court refused this request, stating that the fourteen jurors had already been accepted.

The trial court reasonably concluded that when faced with the facts of this case, the juror simply changed his opinion regarding the implication of the death penalty:

> ... Juror Graham sat close by appellant when he gave his testimony regarding the details of the robbery, kidnapping, and the other actions toward Mrs. Lowe up to the time he put a bullet in the back of her head. He heard appellant tell of other murders and robberies. He sat closely to appellant during the entire trial observing and seeing a man who would do what appellant admittedly did in this case and would commit other murders as appellant readily admitted during his testimony. How can it now be said then that Juror Graham violated his oath and that because of such a violation, appellant is entitled to a new trial. There is no indication that anything occurred except that the juror changed his mind. There is nothing to indicate duress, undue influence by other jurors, or any other wrong. We find no reversible error here.

*Pruett*, 431 So.2d at 1107–08.

This court likewise can find no indication whatsoever of duress, undue influence, or fraud. Juror Graham simply changed his mind and in so doing certainly did not violate the constitutional rights of petitioner. This claim is patently without merit.

### K. CONSIDERATION OF IMPROPER AGGRAVATING CIRCUMSTANCES.

Petitioner asserts that his death sentence is unconstitutional because the jury was allowed to consider as evidence in aggravation of the crime, matters which were inflammatory and prejudicial and which were wholly unrelated to the statutory aggravating circumstances prescribed by Mississippi's death penalty law, in violation of petitioner's rights guaranteed under the eighth and fourteenth amendments.

During the sentencing phase, the court admitted, over objection, a video taped interview of petitioner filmed when he was first incarcerated in the Jackson city jail. The tape dealt with matters such as petitioner's desire to be executed, R. 1016, 1019–20, whether he would accept counsel, R. 1016, petitioner's drug use, R. 1018, and his future willingness to commit murders, R. 1017. The tape also contained specific references to advice attorneys had given petitioner concerning the fifth amendment, disclosure of details concerning the homicide, and such declarations as "It's like a war hero once he got the taste of blood, that's what makes him a hero. He can keep on killing." R. 1020.

Under Mississippi law, the prosecutor in the sentencing phase is strictly limited to presenting evidence which is relevant to one or more of the aggravating circumstances outlined in MISS.CODE ANN. § 99–19–101(5) (Supp.1982). *See Gray v. Lucas*, 677 F.2d 1086 (5th Cir.1982) (Mississippi's construction of death penalty statute allows admission only of evidence which is relevant to enumerated aggravating factors); *Coleman v. State*, 378 So.2d 640 (Miss.1979) (same). These aggravating circumstances are:

> a) The capital offense was committed by a person under sentence of imprisonment.
>
> b) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.
>
> c) The defendant knowingly created a great risk of death to many persons.
>
> d) The capital offense was committed while the defendant was engaged, or was an accomplice, in the commission of or attempt to commit or flight after committing or attempting to commit any robbery, rape, arson, burglary, kidnapping....
>
> e) The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

f) The capital offense was committed for pecuniary gain.

g) The capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.

h) The capital offense was especially heinous, atrocious or cruel.

On direct appeal, petitioner asserted that as the taped interview was used along with other evidence to secure a change of venue, it was thereby improper for it to be presented to the jury in the county to which the case was changed. The court found no merit to this contention, stating that:

A transcription of the question and answers during the taped interview appears in the record and an examination thereof does not begin to compare with appellant's sworn testimony at trial and could not possibly have done him as much harm as his personal testimony before the jury reciting the gory details of his killing of Mrs. Lowe.

*Pruett v. State,* 431 So.2d 1101, 1109 (Miss. 1983).

The Supreme Court did not address the question of whether or not the admission of the taped interview violated MISS.CODE ANN. § 99–19–101(5), in that the substance of the interview did not bear upon any of the enumerated statutory aggravating factors. On a habeas petition, the federal inquiry is somewhat different. In *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), the Supreme Court upheld a death sentence despite the reliance by the trial court on an aggravating circumstance that was improper under state law. The plurality stated that "mere errors of state law are not the concern of this Court," unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution. *Id.* In *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court held that a death sentence imposed under the Georgia capital punishment scheme is not invalid when imposed partly on the basis of nonstatutory aggravating factors, provided that at least one valid statutory aggravating factor supports the sentence and that the invalid factor itself is not "constitutionally impermissible or totally irrelevant to the sentencing process." *Id.* The court reasoned that:

Statutory aggravating circumstances play a constitutionally necessary function at the state of legislative definition: They circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime. (Citations omitted.)

*Stephens,* 462 U.S. at 879, 103 S.Ct. at 2744, 77 L.Ed.2d at 251.

In *Stephens,* although one of the factors considered by the sentencing authority was deemed invalid, the death penalty was nonetheless constitutionally permissible because of the existence of two remaining aggravating circumstances that "adequately differentiate[d that] case in an objective, evenhanded and substantively rational way from the many Georgia murder cases in which the death penalty may not be imposed." *Id.*

Thus, a failure of a trial court judge to follow state law in regard to the consideration of aggravating circumstances does not necessarily violate the Constitution. The sentencer, however, must not rely on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as race, religion or political affiliation of the defendant" or "conduct that actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness." *Id.* The sentencing authority likewise does not possess discretion to impose the death penalty based on nonstatutory aggravating circumstances which preclude the consideration of mitigating circumstances. *Moore v. Balkcom,* 716 F.2d 1511 (11th Cir.1983). *See*

*also Eddings v. Oklahoma,* 455 U.S. 104, 113–15, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982). The critical question is "whether the trial judge's consideration of this improper aggravating circumstance so infects the balancing process created by [state] statute that it is constitutionally impermissible for the [state] supreme court to let it stand. *Barclay,* 77 L.Ed.2d at 1134. *See Wainwright v. Goode,* 465 U.S. 1014, 104 S.Ct. 1017, 78 L.Ed.2d 187 (1983) (even if Court of Appeals was correct in concluding that sentencing judge relied on facts unavailable to him under state law, it erred in reversing district court's dismissal of Goode's habeas petition since balancing of aggravating and mitigating circumstances did not result in arbitrary or freakish imposition of death penalty).

In *Henry v. Wainwright,* 721 F.2d 990 (5th Cir.1983), the Fifth Circuit, in light of *Barclay* and *Stephens,* reversed its prior decision that it was constitutional error for the sentencing authority to consider nonstatutory aggravating circumstances in determining whether to impose the death penalty. Henry contended that *Barclay* was inapposite inasmuch as in his case the nonstatutory aggravating evidence was improperly admitted by the trial court. In rejecting this contention, the Fifth Circuit noted that "the court in *Barclay* did not rely heavily on the coincidence that the evidence was properly admissible under state law," *Id.* at 993, and concluded that:

> To accept Henry's argument would create an anomaly: The sentencing authority could constitutionally consider non-statutory aggravating circumstances only if the evidence supporting those circumstances had validly been admitted on some other ground. This result would contradict the clear language in *Barclay* that "the constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or mitigating factors as long as that information is relevant to the character of the defendant or the circumstances of the crime."

*Id.* at 994.

Under the facts *sub judice,* the contents of the taped interview, though most likely irrelevant to prove the existence of a statutory aggravating factor, cannot be said to be irrelevant to petitioner's character or the circumstances of the crime.

Further, the jury cannot be said to have relied upon the information contained in the taped interview, as there existed substantial evidence of statutory aggravating factors. In fact, the jury specifically found the following statutory factors to be present:

1) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.

2) The defendant knowingly created a great risk of death to many persons.

3) The capital offense was committed while the defendant was engaged in the commission of or flight after committing kidnapping.

4) The capital offense was committed for the purpose of avoiding or preventing a lawful arrest.

5) The capital offense was especially heinous, atrocious, or cruel.

Thus, we are provided adequate assurance that Pruett's sentence does not rest with any substantial weight on a nonstatutory factor. *See Henry v. Wainwright,* 721 F.2d at 994. Accordingly, we find that this claim must fail.

## L. IMPROPER LIMITATION OF TESTIMONY BY AND CROSS–EXAMINATION OF MITIGATING WITNESS.

Petitioner asserts that his constitutional rights guaranteed under the eighth and fourteenth amendments were violated when the trial court improperly limited the testimony of his mitigating witness and thereafter allowed the witness to be improperly cross-examined.

In a long line of cases, the United States Supreme Court has clearly established that:

> The eighth and fourteenth amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a mitigating

factor, any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers on a basis for a sentence less than death.

*Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1976).

Recognizing "that the imposition of death by public authority is ... profoundly different from all other penalties," the plurality in *Lockett* held that the sentencer must be free to give "independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation." *Id.* at 605, 98 S.Ct. at 2964. Just as the state may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer, as a matter of law, refuse to consider any relevant mitigating evidence. The sentencing authority "may determine the weight to be given relevant mitigating evidence. But they may not give it no [sic] weight by excluding such evidence from their consideration." *Eddings v. Oklahoma,* 455 U.S. 104, 115, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). The key inquiry under these cases is relevancy. Where evidence is relevant in mitigation, rules of evidence are relaxed. In *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), during the sentencing phase of petitioner's capital murder trial, petitioner sought to elicit testimony from a witness regarding a confession of guilt made to him by a defendant jointly charged with the same murder. *Id.* at 96, 99 S.Ct. at 2151. The state trial court refused to allow this testimony, ruling that it was hearsay and thus inadmissible under the Georgia code. The Supreme Court, vacating the death sentence, stated:

> Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the due process clause of the fourteenth amendment. The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial....

Citing *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), the Court concluded that "In these unique circumstances, 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.'" *Id.* at 97, 99 S.Ct. at 2151. Although there is very little law on the question of to what extent rules of evidence are relaxed in the context of mitigation at the sentencing phase, *Barefoot v. Estelle,* 697 F.2d 593 (5th Cir.1983), reflects the Fifth Circuit's concern over the "federalization" of the law of evidence. In commenting on the Supreme Court's ruling in *Green,* the Fifth Circuit stated:

> We think that *Green* is limited to its facts, and certainly did not federalize the law of evidence. It does however indicate that certain egregious evidentiary error may be redressed by the due process clause.

*Barefoot* at 597. This case certainly does not present such an egregious evidentiary error. The issue here is whether or not the trial court's comments actually had the effect of limiting any relevant mitigating testimony. In context, the judge's ruling merely seems to be an attempt to prevent a drawn out narration as opposed to an exclusion of relevant testimony. In pertinent part, the record reads as follows:

Q: Tell the court and jury what you saw and found and what the conversation was you had with Mr. Pruett the first time that you actually saw this convicted murderer here face to face.

A: Well, ever—when I went in, we just—I sat down and just acted myself. I shared part of his life, things that had happened to me before I met the Lord and I had two other people with me and they shared their experiences before they met the Lord and how that God could change his life like he changed our life, you know. And that—you know, some of the things that we went through he'd gone through. It's hard for a prisoner to forgive himself and I was trying to point out to him that there's forgiveness, no matter what you've done. You know, like the—the Apostle Paul, he went killing all the Christians and—

Q: That's when his name was Saul, is that right?

A: Yeah, he was Saul and then he was called Paul and so he—the Lord smote him down on the road to Damascus—

By Mr. Peters: If it please the court, we are going to object to her interpretation of the Bible.

By Mr. Jordan: I'm just asking her what she said to him. How she got—

By the Court: But you can't relate the whole conversation, Mr.—

By Mr. Jordan: Okay.

Q: All right, in summary, would it be succinctly put that you at that time had told him that there was forgiveness and hope for everyone.

A: Right.

R. 1033–1034.

In *Edwards v. Thigpen,* 595 F.Supp. 1271 (S.D.Miss.1984), the issue of limitation of mitigation witness testimony on hearsay grounds was presented. The court concluded that:

Read as a whole, it is clear that the trial judge did not limit the evidence which the defendant could put on in mitigation, but rather was ruling on elementary principles of evidence in not allowing a witness to repeat self-serving statements made by the defendant to the witness while the defendant was not under oath or subject to cross examination. The trial judge allowed the priest's testimony about his mental impressions and observations of the defendant.... This court finds nothing unfair or limiting in the trial judge's rulings as to evidentiary questions during the sentencing phase.

*Id.* at 1288.

Likewise, it is clear from the record *sub judice* that the trial judge did not exclude relevant information. The judge's comment merely cautioned the witness against cumulative and narrative response. The gist of Ms. Gamill's testimony—that Mr. Pruett was born again and that he no longer wanted to die but rather live to serve the Lord—was substantially admitted. Consequently, we fail to find error of constitutional dimension in the trial court's limitation of Ms. Gamill's testimony.

## M. IMPROPER INSTRUCTIONS AND IMPROPER JURY FINDINGS AT SENTENCING.

Petitioner asserts that the failure of the trial court to properly instruct the jury in its determination of whether the death penalty was appropriate and the jury's failure to make findings regarding aggravating circumstances consistent with the law and constitutional requirements violated petitioner's rights under the fifth, eighth, and fourteenth amendments to the United States Constitution. Petitioner cites the following specific violations:

1. The Instructions Failed to Guide the Discretion of the Jury in Considering Aggravating Circumstances.

Petitioner contends that since the jury was given no definition of the aggravating circumstance that the crime was "heinous, atrocious or cruel," said circumstance was improperly considered by the jury on aggravation. Petitioner failed, however, to proffer an appropriate instruction defining the terms "heinous, atrocious or cruel" at the trial court level and, therefore, is now precluded from asserting lack of instructional guidance. *See Gray v. Lucas,* 677 F.2d 1086, 1109 (5th Cir.1982); *Wheat v. State,* 420 So.2d 229 (Miss.1982); *Newell v. State,* 308 So.2d 71 (Miss.1975). No showing of cause or prejudice was made sufficient to overcome this procedural default. Consequently, this claim is barred from federal review.

2. The Failure to Instruct on the "Life Option."

Petitioner asserts that the trial court failed to instruct the jury that it had an option to impose a life sentence without regard to the relative weight of the aggravating and mitigating circumstances. The defendant tendered the following instruction:

You are instructed that you need not find any mitigating circumstances in order to return a sentence of life imprisonment.

Petitioner asserts that by virtue of the trial court's refusal to so charge the jury, the instructions amounted to a mandatory di-

rection to impose a death sentence if mitigating circumstances were outweighed by aggravating circumstances in that the jury was not given the ability to impose a life sentence if it determined that to be the appropriate sentence under all the circumstances.

 Federal habeas review of jury instructions is restricted. Singular aspects of the charge may not be viewed in isolation. *Cupp v. Naughton,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–401, 38 L.Ed.2d 368 (1973). Instead, the federal court must examine the charge as a whole to determine the adequacy of the instruction. *Davis v. McAllister,* 631 F.2d 256, 260 (5th Cir.1980), *cert. denied,* 452 U.S. 907 (1981). Furthermore, a deficiency, if found, must have violated some right guaranteed by the Constitution, and it must so infect the entire trial that a resulting conviction or sentence violates due process. *Cupp* at 146, 94 S.Ct. at 400. Instructions, read as a whole, must "channel the sentencer's discretion by clear and objective standards" and "provide specific and detailed guidance." *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.1982). Intrinsic to this channeling is the inclusion of an instruction on the issue of mitigation. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1978). As a corollary to the mandate of *Lockett v. Ohio,* the Fifth Circuit additionally requires that the jury be instructed on the option to recommend against death even if it finds that the aggravating circumstances outweigh the mitigating. *See Spivey v. Zant,* 661 F.2d 464, 470–71 (5th Cir.1981); *Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978).

The charge at issue reads as follows:

JURY INSTRUCTION NO. 14

You have found the Defendant guilty of the crime of "Capital Murder". You must now decide whether the Defendant will be sentenced to death or to life imprisonment. In reaching your decision, you must objectively consider the detailed circumstances of the offense for which the Defendant was convicted, and the Defendant himself.

To return the death penalty, you must unanimously find from the evidence, beyond a reasonable doubt, that aggravating circumstances—those which tend to justify the death penalty—outweigh mitigating circumstances—those which tend to justify the penalty of life imprisonment.

If you unanimously find from the evidence in this case, beyond a reasonable doubt, any of the following aggravating circumstances:

1. The Defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.

2. The Defendant knowingly created a great risk of death to many persons.

3. The capital offense was committed while the Defendant was engaged in the commission of or flight after committing kidnapping.

4. The capital offense was committed for the purpose of avoiding or preventing a lawful arrest.

5. The Capital offense was committed for pecuniary gain.

6. The capital offense was especially heinous, attrocious or cruel.

then you must proceed to weigh the aggravating circumstances and the mitigating circumstances, one against the other, to determine whether the aggravating circumstances, if any, outweigh the mitigating circumstances.

The mitigating circumstances which you may consider include the follows:

1. The offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance.

2. The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

3. The age of the Defendant at the time of the crime.

4. Any and all other matters, facts and circumstances which you as jurors

may consider from the evidence as mitigating.

5. Any circumstances or combination of circumstances surrounding the Defendant's life and character or the offense itself which reasonably mitigates against imposition of the death penalty.

If you unanimously find from the evidence, beyond a reasonable doubt, any one or more of the aggravating circumstances listed above, and, if after weighing the mitigating circumstances and the aggravating circumstances, one against the other, you further find unanimously from the evidence beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances *and* the death penalty should be imposed, your verdict shall be written on a separate sheet of paper, shall be signed by your foreman, and shall be in the following form:

"We, the Jury, find unanimously and beyond a reasonable doubt the following aggravating circumstances: (list the aggravating circumstances, if any, which you unanimously find beyond a reasonable doubt from those listed above in the same language as they are listed.) We, the Jury, further find unanimously from the evidence and beyond a reasonable doubt that after weighing the mitigating circumstances and the aggravating circumstances, one against the other, that the aggravating circumstances do outweigh the mitigating circumstances and that the Defendant should suffer the penalty of death."

---

Foreman of the Jury

If you fail to find any aggravating circumstances unanimously and beyond a reasonable doubt, or if you find unanimously and beyond a reasonable doubt one or more aggravating circumstances, but after weighing the aggravating and mitigating circumstances, one against the other, you fail to unanimously find, beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating circumstances, then your verdict shall be in the following form: ....

This same jury instruction was challenged for failure to instruct on the life option in *Edwards v. Thigpen*, 575 F.Supp. 1271 (S.D.Miss.1984). The court found that:

> The jury was given three choices by this instruction. It could find that the aggravating circumstances outweighed the mitigating circumstances, that the mitigating outweighed the aggravating circumstances or that they were unable to reach a concensus. Under the second two alternatives, a life sentence would be imposed. The wording of the first alternative includes the additional phrase "*and* that the death penalty should be imposed" which gave the jury an option of imposing the death penalty or of granting mercy even if the aggravating circumstances outweighed those which mitigated if they felt the death penalty was inappropriate.

*Id.* at 1286.

We agree with the *Edwards* court and further emphasize that the placement of the word "and" requires that the jury make an additional finding that the death sentence is appropriate after they have determined that the aggravating factors outweigh the mitigating. We cannot conclude that this instruction, taken as a whole, amounted to a mandatory direction to impose a death sentence if the mitigating circumstances were outweighed by the aggravating. For this reason, we find no violation of the principle enunciated in *Spivey v. Zant*. Further, this court finds no basis for requiring the jury to specifically be instructed that they may ignore the balancing of aggravating and mitigating circumstances and vote for life imprisonment based on a decision to be merciful.

3. Failure to Instruct the Jury That it Must Find Beyond a Reasonable Doubt That the Aggravating Circumstances Outweigh the Mitigating Circumstances.

 Petitioner's claim hereunder of constitutional infraction is patently meritless. Although Mississippi requires that

jurors find the existence of each aggravating circumstance beyond a reasonable doubt, the jury may return the death penalty if the aggravating circumstances are not outweighed by the mitigating circumstances. The actual weighing process is left to the jury's discretion. *Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982). This allocation of proof accords with the constitutional requirements of capital sentencing procedures. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Fla.,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Specific standards for balancing aggravating against mitigating circumstances are not constitutionally required in narrowing the categories of murders for which a death sentence may be imposed. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Furthermore, the jury was in fact instructed, albeit incorrectly to petitioner's benefit, that it must find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances in order to reach a verdict of death. Petitioner's claim is, therefore, specious on its face.

4. Failure to Adequately Define Nature and Function of Mitigating Circumstances.

■ Petitioner asserts that the trial court's instructions were constitutionally inadequate in that they failed to instruct the jury on the full nature and function of mitigating circumstances in determining whether mercy is appropriate. *Spivey v. Zant,* 661 F.2d 464 (5th Cir.1981), mandates that jury instructions "describe the nature and function of mitigating circumstances which, although not justifying or excusing the offense, may properly be considered in determining whether to impose the death sentence." *Id.* at 472. The *Spivey* directive requires the court to tell the jury what a mitigating circumstance is and what its function is in the jury's deliberations. *See also Westbrook v. Zant,* 704 F.2d 1487 (11th Cir.1983); *Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978).

Petitioner offered the following instruction:

The court instructs the jury that mitigating circumstances are those which do not constitute a justification or excuse for the offense in question, but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame.

This instruction was taken verbatim from *Spivey v. Zant.* However, mindful of our duty to construe the jury instructions as a whole, we conclude that the charge taken in its entirety properly apprises the jury of the nature and function of mitigating circumstances.

Although the trial court's definition of mitigating circumstances as "those which tend to justify the penalty of life imprisonment" falls short of the *Spivey* explanation, the trial court herein further provided that the following circumstances may have been considered in mitigation:

(1) The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(2) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

(3) The age of the defendant at the time of the crime.

(4) Any and all other matters, facts, and circumstances which you as jurors may consider from the evidence as mitigating.

(5) Any circumstance or combination of circumstances surrounding the defendant's life and character or the offense itself which reasonable mitigates against imposition of the death penalty.

Thus, by illustration, the trial court supplemented its original definition of mitigating circumstances. This court cannot conclude that the dictates of *Spivey v. Zant* have been violated.

5. The Use of Duplicate Aggravating Circumstances Emanating From the Same Set of Facts Impermissibly Skewed the Sentencing Proceeding in Favor of Death.

■ Petitioner claims that since the jury was instructed that it could find as

separate aggravating circumstances that the defendant committed the offense while in "flight after committing kidnapping" and that the offense was committed "for the purpose of avoiding or preventing a lawful arrest," he was required to overcome the weight of two aggravating circumstances instead of one inasmuch as both circumstances covered the same aspect of petitioner's crime.

In returning a sentence of death, the jury found the presence of five aggravating circumstances:

(1) The defendant was previously convicted of another capital offense or of a felony invoking the use or threat of violence to the person.

(2) The defendant knowingly created a great risk of death to many persons.

(3) The capital offense was committed while the defendant was engaged in the commission of or flight after committing kidnapping.

(4) The capital offense was committed for the purpose of avoiding or preventing a lawful arrest.

(5) The capital offense was especially heinous, atrocious, or cruel.

This court cannot imagine that the elimination of one of the aggravating circumstances would have made any difference to this jury. Nevertheless, the fact that the statute allows the finding of two statutory aggravating circumstances based on the single set of facts presented by this case does no violence to the requirements of the eighth amendment. The instructions concerning aggravation and mitigation comported with constitutional requirements. *See Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The aggravating circumstances found in this case operated to properly narrow the class of persons eligible for the death penalty. The imposition of the death penalty under these circumstances did not create a substantial risk of infliction in an arbitrary and capricious manner. *See Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). This claim must fail.

6. The Refusal to Instruct the Jury That it Could Not Act in Reliance on the Granting of Clemency or Leniency.

▮ The trial court refused petitioner's proposed instruction informing the jury that it could not decide punishment in reliance on the granting of clemency or leniency. While such instructions may be permissible under the Constitution, they are not mandated thereby. *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); *O'Bryan v. Estelle,* 714 F.2d 365, 388–89 (5th Cir.1983). The substantive limitations imposed upon the capital sentencing process concern the prevention of arbitrary and "freakish" jury action. The "leniency" instruction does not implicate such substantive limitations and, therefore, the states remain free to determine whether or not such instruction should be given. *Ramos,* 463 U.S. at 1013, 103 S.Ct. at 3460. Mississippi has determined, along with a number of other states, that jury consideration of such matters is improper. *See Bullock v. State,* 391 So.2d 601, 610 (Miss.1980). Thus, petitioner's claim presents no constitutional infraction and no ground for federal habeas relief.

## N. IMPROPER CLOSING ARGUMENT—SENTENCING PHASE.

▮ Petitioner asserts that the pronounced and persistent misconduct by the prosecutor during closing argument at the sentencing phase of the trial violated petitioner's rights guaranteed by the fifth, eighth, and fourteenth amendments to the Constitution.

Although petitioner cites numerous instances of alleged misconduct,[4] only one

---

4. Petitioner lists a catalog of prosecutorial misbehavior. The following is an attempted summarization: (1) attempting to persuade the jury that it was their religious and patriotic duty to sentence petitioner to death; (2) suggesting that

if a life sentence were imposed, petitioner would be free to kill again; (3) suggesting that the jurors would be saving money if they executed the petitioner; (4) suggesting that if given the opportunity, petitioner would kill his attor-

objection was made to the substance of the argument. In order to preserve such a claim for appellant review, the Mississippi Supreme Court requires that a contemporaneous objection be made to the offensive matter at trial. *See, e.g., Hill v. State*, 432 So.2d 427 (Miss.1983); *Coleman v. State*, 378 So.2d 640 (Miss.1979). Having failed in this regard, and absent a showing of cause and prejudice, petitioner can only rely upon the one instance in which an objection was interposed to alleged misconduct in support of his claim. The subject portion of the prosecutor's argument reads as follows:

> By Mr. Peters: Right over there is a Christian family, and Mr. Binder says it won't do a bit of good for Marion Albert Pruett to get the death penalty. Over there is the wife of a child whose mother never saw that child because of Marion Albert Pruett. You tell me it won't do some good for them to hear what happened to the man that saw that she would never, ever in her life see her first grandchild. Ever. You didn't do it. Your're not to blame. Your're not the reason he'll get the penalty he deserves. He is. Don't let them pin it on you. Don't let them tell you "Oh your're an executioner and you did no good." Talk to them. When you come out, tell them. "I just didn't think her death deserved the punishment they were seeking." You tell that little girl that was up there on the stand, the daughter, "Sugar, your-your mother's death didn't matter enough to me to vote for the death penalty. I don't care whether she even got to see her granddaughter or not." ...
> By Mr. Jordan: We object to this, we let it go on, but it's highly prejudicial.
> By the Court: Overruled.

■ In reviewing the propriety of a prosecutor's comments made during a state trial, we apply the same basic standard used in reviewing a state court's evidentiary rulings. A state court conviction or sentence may be overturned only if the alleged error rendered the trial fundamen-

ney; (5) inflaming the passion of the jury by suggesting that they were accountable to the

tally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Mattheson v. King*, 751 F.2d 1432, 1445–46 (5th Cir.1985). It is our conclusion that the prosecutor's remarks, although unsavory, did not render the sentencing phase of the trial fundamentally unfair. Viewing the argument together with the evidence against petitioner, we conclude that the jury's recommendation of death was not influenced by improper comments. The jury found five aggravating factors, and there was little mitigating evidence presented. See *Willie v. Maggio*, 737 F.2d 1372, 1391 (5th Cir.1984); *see also Bronstein v. Wainwright*, 646 F.2d 1048, 1056 (5th Cir.1981) (weak case against defendant will cause prosecutor's improper comments to assume greater significance); *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir.1970) ("statement complained of did not rise to level of a denial of due process when considered in light of evidence against appellant"). For these reasons, petitioner has failed to state a claim of constitutional significance.

## O. DENIAL OF FUNDAMENTALLY FAIR SENTENCING HEARING.

Petitioner incorporates by reference claims A–N and asserts that the cumulative effect of these alleged errors operated to deny him a fair sentencing hearing. As previously stated, we have found all but one of Pruett's claims to be without merit. Consequently, those meritless claims cannot now be relied upon to preface cumulative error of constitutional proportion.

## P. UNRELIABLE SENTENCING REPORT.

■ Petitioner asserts that the sentencing report prepared by the trial judge pursuant to Miss.Code Ann. § 99–19–105 was inaccurate and misleading, and for this reason, the Mississippi Supreme Court's reliance on this report rendered its review of the sentence constitutionally inadequate. The United States Supreme Court's deci-

decedent's family.

sion in *Gardner v. Florida,* 430 U.S. 349, 360, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977), requires that "... the record on appeal disclose to the reviewing court the considerations which motivated the death sentence in every case in which it is imposed." The sentencing report at issue complies with this directive. The trial judge noted the five aggravating factors found by the jury and summarized the evidence at trial upon which they were predicated. The considerations which motivated the death sentence were thus properly disclosed. There was no error of constitutional magnitude.

## Q. INADEQUATE APPELLATE REVIEW.

Petitioner argues that the Mississippi Supreme Court failed to conduct the meaningful appellate review of his sentence that the United States Supreme Court has found to be a safeguard against arbitrary application of the death penalty. *See Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 26 (1984). In support of this contention, Pruett states that the court improperly reviewed the trial court's application of the aggravating circumstance that the crime was "especially heinous, atrocious or cruel." As previously discussed, petitioner failed to object to the applicability of this particular circumstance at trial and thereby forfeited his right to assert this claim on appeal. Secondly, Pruett contends that review was inadequate inasmuch as the court allowed the sentencing jury to "double up" aggravating circumstances. We have already disposed of the substance of this claim under subheading M(5) of this

opinion. Petitioner finally argues that he was denied his right to an adequate proportionality review of his sentence. This claim has been foreclosed by the United Supreme Court's holding in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). We consequently find no error of constitutional proportion concerning the appellate review conducted by the Mississippi Supreme Court.

## R. DISCRIMINATORY APPLICATION OF THE DEATH PENALTY.

Petitioner contends that his death sentence was imposed pursuant to a discriminatory pattern and practice in violation of his rights guaranteed under the eighth and fourteenth amendments of the United States Constitution. The death penalty in Mississippi, Pruett argues, is discriminatorily applied against defendants who are poor, who are accused of killing caucasians, and who are black. Mr. Pruett has, however, forfeited this claim inasmuch as it was not presented to the trial court by motion subsequent to the sentencing phase or motion for a new trial. Having failed to show cause and prejudice, the doctrine of *Wainwright v. Sykes* precludes federal review.[5]

## S. INEFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner alleges that he was deprived of his sixth and fourteenth amendment rights to effective assistance of counsel and cites no less than twenty-seven instances of deficient performance.[6] Ac-

5. We are inclined to agree with the Mississippi Supreme Court's pronouncement of this claim as "ridiculous" in its denial of error coram nobis relief. Marion Albert Pruett is white, and the statistical study now proffered, an unpublished manuscript entitled "Capital Sentencing in Mississippi," condemns the Mississippi sentencing structure because of its discrimination against blacks.

6. Pruett alleges in his Petition for Writ of Habeas Corpus that:
But for counsel's constitutionally ineffective assistance, the trial would not have included testimony concerning other crimes, including murder, with which petitioner had not yet been

tried, much less convicted. Nor would the trial have included testimony concerning untried criminal charges in seven other jurisdictions or the fact that petitioner was considered dangerous and not to be taken alive.
But for counsel's constitutionally ineffective assistance, evidence concerning petitioner's past and future propensity for violence would not have been admitted. Nor would the prosecution have been permitted to confront petitioner's character with that of the deceased's and to ultimately urge jurors to sentence petitioner to die out of a sense of obligation to the deceased's family and other crime victims, past and future. Moreover, had petitioner been previously advised and known that he would be questioned

companing this list is an affidavit from petitioner's co-counsel reciting that lead counsel's assistance was rendered ineffective when he asked petitioner on direct examination if there were any "charges" pending against him. Having inquired into charges rather than convictions, testimony was elicited concerning the pendency of several armed robbery and three murder charges against Pruett. Whether or not this error alone or when coupled with the other alleged deficiencies suffices to render counsel ineffective is, however, irrelevant. We conclude, as did the state supreme court on its denial of error coram nobis review, that Pruett acted as his own counsel. That Pruett's appointed "legal advisors" participated fully in his defense is insufficient to negate petitioner's repeated insistence throughout the record that he acted as his own attorney.

Prior to indictment, the trial judge questioned Pruett extensively regarding his desire to represent himself and his ability to do so. R. 4–16. The trial court fully advised petitioner of his right to have appointed counsel. Petitioner insisted on representing himself as his own attorney but requested that "legal advisors" be appointed to assist him. He stated that he had successfully represented himself in the past, had done legal research while incarcerated, and was thoroughly familiar with the manner in which his defense should be conducted. When petitioner took the stand, he was again specifically asked, "You are your own attorney, are you not?", and he answered, "Yes sir, I am." R. 931. On final argument, the leading "legal advisor" stated that "he (petitioner) said many things today without advice from counsel. He acts as his own counsel most of the time in certain areas." R 1095.

*Faretta v. Calif.*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), instructs that "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Id.* at 834, n. 46, 95 S.Ct. at 2541 n. 46. The record herein demonstrates that petitioner knowingly waived his right to counsel and was made fully aware of the perils of self-representation. The trial court appointed two legal advisors at Pruett's request. Petitioner may not now complain that his advisors ineffectively "co-represented" him and denied him a fair trial. Pruett's claim of ineffective assistance of counsel must fail.

### III. *Conclusion.*

We have found petitioner's claim of juror bias (claim C) to warrant habeas corpus relief inasmuch as the trial court's failure to excuse juror Ronald Smith for cause resulted in a denial of petitioner's sixth amendment right to an impartial jury. We have examined and discussed the remainder of Pruett's claims and find them all to be without merit. As the claim of juror bias requires relief, it is this court's solemn duty to grant the writ of habeas corpus directing that the State of Mississippi release the petitioner from custody pursuant to the aforesaid conviction unless the state elects to retry petitioner on such charge within 120 days from the date herein.

An order in conformity with this opinion shall issue.

by both defense counsel and the prosecution about other criminal matters, he would not have testified on his own behalf.

But for counsel's failure to limit prejudicial evidence or object to inflammatory argument, petitioner's jury would have been able to weigh mitigating and aggravating circumstances in a setting consistent with reasoned elaboration and the requirements of the sixth and fourteenth amendments.

But for counsel's failure to investigate the impact of narcotics on petitioner's conduct, and counsel's failure to obtain expert testimony, the jury would have learned of substantial evidence in mitigation of the death penalty.

If the preceding had not been distorted by irrelevant and prejudicial evidence regarding petitioner's character, prior bad acts and pending charges, a different sentencing decision could have been reached.

Had exculpatory evidence pertaining to petitioner's mental state been presented, a different balancing of aggravating and mitigating circumstances would have resulted, thereby yielding a different outcome at the sentencing phase.