**Lucille DeFRANK, Plaintiff,**

v.

**Joseph PAWLOSKY et al., Defendants.**

**Civ. A. No. 79–579.**

United States District Court,
W. D. Pennsylvania.

Nov. 2, 1979.

William R. Lauer, Pittsburgh, Pa., Debbie O'Dell, Washington, Pa., Sandra Reiter Kushner, Joseph A. Vater, Jr., William G. Boyle, Pittsburgh, Pa., R. Wallace Maxwell, Waynesburg, Pa., A. J. Marion, Sol. of Greene County, John I. Hook, Jr., Waynesburg, Pa., for defendants.

Joseph P. Moschetta, Washington, Pa., Harry Alan Sherman, Pittsburgh, Pa., for plaintiff.

## OPINION

DUMBAULD, Senior District Judge.

Before us is a motion to dismiss, on behalf of all defendants, filed June 29, 1979. Accordingly the truth of allegations in the complaint is assumed *arguendo,* and the Court is to make no findings of fact upon any disputed issue of fact.[1]

Plaintiff is a nurse and on June 30, 1978, was discharged from her position at the Curry Memorial Nursing Home, a facility for the aged, operated by Greene County. Named as defendants are (1) the County

---

1. As stated in the following paragraph, one group of defendants sued is a union and its officers. Apparently plaintiff believed that defendants Descaro, Hawkins, Patterson, and Bonnichsen are or were at pertinent times officers of defendant union. Defendants say the individuals were merely members of the union and not officers. If their status became significant, further proceedings for summary judg-

Commissioners in office at that date[2]; (2) Service Employees International Union, Local No. 585, which represents employees at the home (but of which plaintiff was not a member, her employment having been apparently as a management level employee), together with four individuals alleged to be officers of the union[3]; (3) Thomas Boyd, Jr., acting administrator of the home[4]; (4) Marlene Eitner, a social worker at the home (whose salary was later increased by Boyd), and Diana Piatt (later appointed Director of Nursing at the home by Boyd "who has openly maintained romatic [sic] relations" with her) who were allegedly enlisted by Boyd "to feign grounds" for plaintiff's dismissal "by corruptly charging plaintiff with inability to maintain proper management-labor relations with non-technical and non-professional employees of said Home, and by circulating a petition seeking her discharge, on the unlawful threat that the union officer defendants and their membership would go on strike if she was retained in her position."

The charging part of the Complaint is found in its paragraph 12:

At all times pertinent, the defendants did jointly and collusively act in concert among themselves and with others presently unknown to plaintiff, for the unlawful, malicious and wrongful conspiratorial purpose of depriving plaintiff of her employment as Director of Nursing and sometime Acting Administrator of the Curry Memorial Nursing Home, her good name, her opportunity for employment in her profession, her liberty interests, her privacy and right of privacy, her property in her mail, her earnings and earning power, her right to advancement, due process, equal and non-discriminatory protection of the laws, her civil and Constitutional rights guaranteed to her by Federal Law, as well as by the laws of Pennsylvania, all to her great damage, distress and hurt, as hereinafter more particularly set out.

Paragraph 24 also alleges:

Since the unlawful dismissal of plaintiff, defendant Boyd and the other defendants have attempted to destroy the reputation of plaintiff so as to forclose [sic] her opportunity for similar employment, and to give color of justification for their unlawful acts, including dismissal of plaintiff as aforesaid. Said conduct of defendants included invasion of her private personnel records at former employment, unlawful withholding from plaintiff mail delivered to and retained at said nursing home for several months following her unlawful dismissal; and otherwise demeaning plaintiff in letters to the editor and news releases to the press and media in the area, without her knowledge or consent.

Giving due weight to the eloquent rhetoric of plaintiff's able counsel, we discern as plaintiff's principal contention that her discharge without a hearing[5] was a denial of due process. We must examine whether the allegations of the complaint state a cause of action under the provisions of 42 U.S.C. 1981, 1982, 1983, 1985, and 1986, as well as of 28 U.S.C. 1331(a) and 1343.[6]

---

ment or jury verdict would be required to determine the issue.

2. One of them, Ernest C. Lemley, died on May 20, 1979, and his executrix was substituted on June 14, 1979 as a party.

3. See note 1, *supra*.

4. Plaintiff alleges that his appointment in that capacity was illegal; that he lacks the qualifications required by law for the position of administrator; that before appointment he promised to discharge plaintiff; and that he is the cousin of Commissioner Pawlosky.

5. She demanded but did not receive a hearing.

6. These are cited in the jurisdictional allegations of paragraph 1, which also cites the First, Fourth, Fifth, Tenth, and Fourteenth Amendments to the United States Constitution. 28 U.S.C. 1331(a) is the ordinary federal question jurisdiction provision; and for present purposes we assume that the $10,000 requirement is satisfied. 28 U.S.C. 1343 gives jurisdiction for cases under 42 U.S.C. 1985 and 1983.

The first two sections [7] relied upon by plaintiff originated in the Civil Rights Act of April 9, 1866, 14 Stat. 27, as re-enacted (after the Fourteenth Amendment took effect) by section 18 of the Act of May 31, 1870, 16 Stat. 140, 144. See *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 422, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)[8]; *Tillman v. Wheaton-Haven Recreation Assn. I,* 410 U.S. 431, 439–40, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). Obviously, these sections merely accord to non-whites the same rights which are enjoyed by whites. They strike at racially motivated discrimination (392 U.S. at 413, 88 S.Ct. 2186) and furnish no basis for a cause of action for the benefit of plaintiff in the case at bar.

Likewise 42 U.S.C. 1985 is applicable only where there is "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). This section is derived from the old Nightriders Act discussed in *U. S. v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1875). The first two subsections expressly require "force, intimidation, or threat" and are directed against preventing officials from doing their duty, or obstructing the course of justice. 42 U.S.C. 1985(3) reaches "two or more persons . . . [who] conspire or go in disguise on the highway . . ., for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." An overt act "whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States" is required to make such conspiracies actionable. State action is required under this provision only in the sense that the State by its law must have created legal protection for the interests asserted. "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 102, 91 S.Ct. at 1798. See also *Robinson v. McCorkle,* 462 F.2d 111, 113 (C.A. 3, 1972); *Novotny v. Great Am. Fed. S. & L. Assn.,* 584 F.2d 1235, 1241–47 (C.A. 3, 1978), vacated and limited on appeal, decided by the Supreme Court on June 11, 1979 at 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957. The Complaint in the case at bar sets forth no cause of action under this section.[9]

We come now to the mainstay of civil rights litigation, 42 U.S.C. 1983.[10]

Here no *racial* animus is involved, but there must be State action, if a right under

---

7. 42 U.S.C. 1981 reads: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   42 U.S.C. 1982 reads: All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

8. The importance of this legislation for black plaintiffs in civil rights cases is that it is based upon the Thirteenth Amendment, and does not (like the Fourteenth) require State action. See 392 U.S. at 438, 88 S.Ct. 2186. Also, by an idiosyncrasy of interpretation adopted by the Supreme Court in the *Mayer* case, blacks were given a sort of private right of eminent domain to purchase from an unwilling seller which white purchasers had never enjoyed.

9. Similarly, there can be no action under 42 U.S.C. 1986, since that section merely gives a remedy for misprision of a violation of 42 U.S.C. 1985. Moreover, any equal protection claim involving State action, as here, could be raised with equal effectiveness under the Fourteenth Amendment. But we perceive no basis for such a claim. There is no invidious classification here.

10. This section provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

the Fourteenth Amendment is involved. Section 1983 forbids subjecting any person to the deprivation of *"any rights . . . secured by the Constitution and laws."* [Italics supplied.] See *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

█ The most plausible basis for a cause of action under § 1983 is plaintiff's contention that to discharge her without a hearing amounted to a deprivation of due process of law. The requisite State action exists, for the County Commissioners who are responsible under the doctrine of *respondeat superior* for Boyd's discharge of plaintiff represent a subordinate subdivision of the Commonwealth.[11]

But does due process require a hearing under the circumstances of the case at bar?

█ Due process requires a hearing only where State law has created a legal entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Henry J. Friendly " 'Some Kind of Hearing!' " 123 U. of Pa.L.Rev. (June, 1975) 1267, 1275.

█ If plaintiff has no "liberty" or "property" interest under State law in the expectation of continued employment, there is no deprivation of due process when she was terminated. *Bishop v. Wood,* 426 U.S. 341, 345–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). As Justice John Paul Stevens said in that case (*Ibid.,* 349–50, 96 S.Ct. 2080):

The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

█ We find no provision in Pennsylvania law granting tenure to plaintiff. She is not like school teachers, who have statutory protection of their jobs; nor is she covered by the terms of a collectively bargained labor agreement, or other contract, giving seniority, civil service status, or other form of job security. In fact 62 P.S. 2256 provides that "The commissioners of each county shall have the power to appoint and remove all necessary employes" without any requirement for hearing or cause.

Plaintiff also cites *Elrod v. Burns,* 427 U.S. 347, 358, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), for the contention that plaintiff's discharge was the result of improper political motivation. But careful analysis of that case discloses that its actual holding was limited in scope and protects only against penalizing the exercise of federal constitutional rights, especially that of free speech, and that no showing of such action was made in the Complaint in the case at bar. *Mulherin v. O'Brien,* 588 F.2d 853, 857 (C.A. 1, 1978). Likewise plaintiff's contentions involving defamation and interference with advantageous relationships merely relate to simple torts, not amounting to violation of constitutionally protected rights. *Isenberg v. Prasse,* 433 F.2d 449 (C.A. 3, 1970); *Fletcher v. Hook,* 446 F.2d 14, 15 (C.A. 3, 1971).

Since we find that the action must fail against all defendants, it is not necessary to consider the situation of the defendants separately. We may remark, however, that whatever action the union defendants have been alleged to have taken would seem to

11. We do not pause to investigate the interesting issue of immunity, since we think it does not apply to administrative officials, but only to law enforcement officials and those engaged in adjudication. See *DuBree v. Commonwealth,* 481 Pa. 540, 544, 393 A.2d 293 (1978). Likewise we do not examine whether the applicable statute of limitations has run.

be arguably a matter within the jurisdiction of the National Labor Relations Board to determine whether it was legitimate labor activity or an unfair labor practice.[12] The activities alleged against defendants Eitner and Piatt arguably constituted an exercise of First Amendment rights. And no prospective relief *in futuro* can be had against the deceased Commissioner defendant Lemely or his executrix.

Moreover, *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), precludes recovery against the Commissioners on the theory of responsibility for any wrongful action by Boyd under the doctrine of *respondeat superior.* A local governmental agency can be held responsible only for a policy or decision officially adopted. *Ibid.,* at 690, 694, 98 S.Ct. 2018. Plaintiff's counsel at oral argument held in his hands a manual promulgated by a former administrator of the home listing ten reasons for disciplinary action or dismissal. It contained the statement: "If no solution is reached [when things go wrong or you have a problem], you will have the right of a hearing before the Board of Commissioners." In an action in Greene County at No. 698 in Equity, 1978, by plaintiff against the County, the Commissioners, and Boyd Judge Toothman correctly interpreted that statement as meaning merely that the Commissioners were the final authority, and could modify any action by a subordinate administrator if they saw fit to do so. It was not the grant of an unqualified right to a hearing in every case of discipline or dismissal.

The case in the Greene County Court of Common Pleas also determined that the manual relied on by plaintiff was merely an administrative pronouncement by the administrator himself, and had never been officially adopted by the Commissioners as a recognized policy statement. This determination is accepted by this Court as binding upon the plaintiff in the present lawsuit, either as *res judicata* or collateral estoppel. *Blonder-Tongue v. University Foundation,* 402 U.S. 313, 323–24, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

Accordingly, defendants' motion must be granted.

---

12. *San Diego Unions v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Plaintiff alleges that the union has been permitted to usurp prerogatives reserved to management under Pennsylvania law. See 43 P.S. 1101.702.

This charge does not seem to be one which the present plaintiff has standing to assert. The State authorities having supervision of nursing homes can remedy such conditions if they exist.