**John G. ARCH, Plaintiff,**

v.

**Judge Nicholas A. PAPADAKOS, an individual, Tarasi & Tighe, P.C., a professional corporation, Louis M. Tarasi, Jr., an individual, Defendants.**

Civ. A. No. 83–2562.

United States District Court, W.D. Pennsylvania.

Jan. 6, 1984.

James R. Schadel, Grogan, Graffam, McGinley, Solomon & Lucchino, Pittsburgh, Pa., for Tarasi & Tighe and Louis M. Tarasi, Jr.

John G. Arch, Pittsburgh, Pa., for John G. Arch.

## OPINION

DUMBAULD, Senior District Judge.

Plaintiff, one John G. Arch, a member of the Allegheny County Bar, seeks in this litigation to transform a squabble over attorneys' fees into a "federal case" of constitutional dimension.

Plaintiff was originally retained by Daniel J. and Marsha L. Stewart to represent their daughter Rebecca who was injured when part of a dead tree fell on her. He filed suit at No. G.D. 81–7147 in the Court of Common Pleas of Allegheny County on behalf of Rebecca but when inquiring of the Stewarts the name of a neighbor to be deposed as a witness they advised him that they desired other counsel and subsequently retained the firm of defendant Louis M. Tarasi, Jr.

When Arch and Tarasi could not agree on how the 40% contingent fee was to be divided, Arch sued the Stewarts for the full fee at G.D. 72–6927 in the Court of Common Pleas of Allegheny County. Tarasi's firm defended the Stewarts in that case, and filed successive preliminary objections which were sustained first by Judge Papadakos, then by Judge Doyle; and finally Judge Weir dismissed additional preliminary objections and ordered the Stewarts to file an answer. For some reason they failed to do so and Arch obtained a default judgment. Tarasi's firm filed a motion to open the judgment and let the defendants in to a defence. This motion was granted by Judge Papadakos.

Arch then filed suit in the case at bar against Judge Papadakos and Tarasi and his firm. By this Court's order of November 18, 1983, the case was dismissed as against Judge Papadakos on grounds of judicial immunity. (An appeal is pending from this dismissal). Tarasi and his firm have now filed a motion to dismiss. Since plaintiff has filed an affidavit in opposition to the motion, and has also attached copies of newspaper articles to his complaint, we may to the extent necessary, if any, treat the pending motion as one for summary judgment.

Plaintiff's complaint contains five counts, charging respectively violation of 42 U.S.C. § 1983 (subjecting to deprivation of rights secured by the Constitution and laws of the United States: to wit, Arch's fee and the default judgment therefor); violation of 42 U.S.C. § 1985 (conspiracy under the "night rider" Act); requesting injunction against participation by Papadakos in cases involving Arch; slander under State law; and counsel fees.

Considering these contentions in the order of their difficulty, and disposing of the easiest ones first, we find for defendants on Count V, since we do not find plaintiff to be a prevailing party who might in that capacity be awarded attorney's fees by statute in civil rights cases; on Count III, as moot, since Judge Papadakos has been already dismissed as a defendant,[1] and the propriety of his sitting or recusing is a matter of State law or State judicial administration, not presenting issues cognizable in this Court; on Count IV as a matter of purely State law to which similar reasoning applies, and falling with the federal claims to which it is "pendent" in the discretion of the Court [*United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)];[2]

---

1. If the request for injunctive relief is to be interpreted as limited to participation by Judge Papadakos as a trial judge in Common Pleas court, the issue is also moot because Judge Papadakos has now been elevated to the position of Justice of the Supreme Court by election upon both tickets.

2. We are inclined to adopt the attitude of an English Lord Chancellor who rejected the complaint of a man who had deserted a woman by whom he had had a child. He had given her a bond for £500 to pay her £50 and sued to enjoin the bond "alleging, as the truth was, that the lady had been taken in bed with another man before." The Lord Chancellor refused the injunction, saying "this should not be a court to examine such matters." Thomas Jefferson's Equity Commonplace Book, item #1396, MS in Huntington Library, San Marino, California, Brock Collection, BR 13.

and Count II, for lack of allegations of racial or class-based invidious discrimination [*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *DeFrank v. Pawlosky,* 480 F.Supp. 115, 118 (W.D.Pa.1979), aff'd 633 F.2d 209 (Table)].

Count I requires more attentive scrutiny. 42 U.S.C. § 1983 provides:

"Every person who, under color of [State law] subjects, or causes to be subjected, any citizen ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ It is a basic principle of civil rights law that not every right violated by conduct amounting to a tort under State law is a right "secured by the Constitution and laws" of the United States. *Fletcher v. Hook,* 446 F.2d 14, 15 (C.A.3, 1971); *Carter v. Chief of Police,* 437 F.2d 413, 415 (C.A.3, 1971).

■ The scope of any right plaintiff may have to "reputation" under Art. I, sec. 1 of the Pennsylvania constitution by virtue of alleged slanderous remarks by defendant Tarasi during his court appearances in behalf of the Stewarts in plaintiff's case against them for the fee may best be left to State court proceedings which are open to plaintiff. The whole slander issue may properly be relegated to the State courts by a judicious exercise of discretion under *Gibbs.*[3] At the present time we may appropriately mention that the remarks of counsel to which attention has been directed in the record before us appear to be ordinary excrescences and emphatic epithets arising from vigorous advocacy in the heat of combat; and we suspect that perhaps plaintiff himself may have indulged in equally acrimonious exchanges. In any event we see nothing which rises to the level of unfair trial in the federal constitutional sense, so as to trigger § 1983.

Moreover with respect to the slander issue, it would seem that defendants are entitled to absolute privilege and immunity as participants in judicial proceedings. Restatement 2nd Torts, § 586. The policy of favoring fearless and uninhibited action in the public interest by guaranteeing advocates (as well as judges) complete *freedom from* litigation rather than merely *victory in* litigation is of long standing and widely recognized. Perhaps it has never been better stated than by Learned Hand in *Gregoire v. Biddle,* 177 F.2d 579, 580–81 (C.A.2, 1949), cited with approval in *Imbler v. Pachtman,* 424 U.S. 409, 424, 428, 96 S.Ct. 984, 992, 994, 47 L.Ed.2d 128 (1976).

■ Turning now to the key question of whether defendants have subjected Arch to deprivation of his fee, we find that no such deprivation exists. In the first place, Arch's suit for the fee against the Stewarts is still pending in the Court of Common Pleas. Even if he has lost the procedural advantage of a default judgment, he is still free in that suit in that court to pursue the *auri sacra fames*[4] and to prevail if his cause is meritorious.

But in that connection, and particularly with respect to his asserted property right in the fee itself (as distinguished from the default judgment therefor),[5] it should be noted that since Rebecca Stewart is a minor, the fairness of the fee amount and allocation of the fee to be paid in the event of success in her case against the Murrays (who owned the tree afflicted with caducity) is subject to determination by the Court of Common Pleas. Until the *quantum* of the fee becomes a sum certain upon ap-

---

**3.** Hence we need not wander into the murky mire of "abstention." *Clark v. Ellenbogen,* 319 F.Supp. 623, 624–25 (W.D.Pa.1970).

**4.** Vergil, *Aeneid,* III, 57.

**5.** And here, too, it must be noted that courts favor freely opening default judgments when it appears that a meritorious defense has been foreclosed. Arch's arguments that Judge Papadakos was not the appropriate motions judge to hear the request to open the judgment raises merely questions of State procedural regulations, not federal constitutional questions of fundamental unfairness.

proval by the court, Arch's claim is a mere inchoate expectancy, like the legal rights of a rich uncle's nephew as heir to the uncle's estate, and not a full-fledged property right, deprivation of which would amount to a violation of § 1983.

It also seems quite unlikely that the court would find that sound public policy permitted Arch to collect the full 40% fee for the initial work he did in filing the case, and also permitted Tarasi to collect the full 40% fee for bringing the litigation to fruition. The court would undoubtedly prescribe an appropriate division of the fee found reasonable for the total services performed by both lawyers, and Arch can not complain of "deprivation" of anything when he fails to collect in full. In any event defendants can not be viewed as the "persons" who "subjected" Arch to the diminution of his emoluments, when it was a decision by the court which would effectively result in such lessening of the lawyer's "take." Indeed it would be the bounden duty of defendants as counsel for the Stewarts to resist Arch's pretentions to a duplicitous and excessive fee. Their best efforts and exertions, in pursuance of a task imposed upon them by law, could not be viewed simultaneously as a violation of law, by contravening § 1983.

We therefore conclude that plaintiff has failed to establish his case under Count I.

Accordingly, we order that plaintiff's cause of action be dismissed with prejudice, or in the alternative (if the affidavits and newspaper clippings showing that Louis M. Tarasi, Jr. and John M. Tighe contributed $500 and $250 respectively out of a total of $133,533.40 to the Papadakos campaign fund be deemed applicable to the remaining defendants, and not simply to the previously dismissed defendant Papadakos) that judgment be entered in favor of defendants Louis M. Tarasi, Jr. and Tarasi & Tighe, P.C., a professional corporation, and against plaintiff John G. Arch.