Stephen S. KNEPP, Plaintiff,

v.

Scott A. LANE, et al., Defendants.

Civ. A. No. 93–CV–4707.

United States District Court, E.D. Pennsylvania.

April 19, 1994.

Ellis M. Saull, King of Prussia, PA, for plaintiff.

Denise A. Kuhn, John G. Knorr, III, Office of Atty. Gen., Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff, Stephen S. Knepp, a registered securities agent in Pennsylvania, has brought suit against Scott A. Lane, Elliot Klein, Cynthia M. Frederick, Joseph J. Carroll, Marie A. Stein, M. Joanna Cummings and Simon J. Dengel, all employees of the Pennsylvania Securities Commission, under 42 U.S.C. §§ 1983, 1985. Section 1983 allows a civil action and an award of damages where a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" has taken place. 42 U.S.C. § 1983 (1979). Similarly, section 1985 allows an award of damages for a conspiracy to deprive those rights or privileges. 42 U.S.C. § 1985 (1980). Plaintiff alleges that the underlying rights

being deprived to him allowing a recovery under these statutes are his equal protection and due process rights granted in the Fourteenth Amendment of the United States Constitution.

■ Defendants have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, which is now ripe for consideration by this Court. Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Under this rule, judgment will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir.1988) (citation omitted).

■ In deciding whether to grant a rule 12(c) motion, the facts and inferences drawn therefrom should be viewed in the light most favorable to the non-moving party. *Institute For Scientific Information, Inc. v. Gordon and Breach Science Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *see also* 5A C. Wright & A. Miller, *Federal Practice And Procedure,* § 1368, at 519 (1990). In order to find for Defendants and grant a judgment on the pleadings, it must be determined that Plaintiff can prove no set of facts to support a finding that Defendants are liable for violating his Fourteenth Amendment rights. *See Institute For Scientific Information,* 931 F.2d at 1005.

The facts as summarized below are not materially in dispute. The issue as framed by both sides is one of law, therefore, appropriate for a determination on the pleadings.

## I. *FACTS*

In 1993, Plaintiff Knepp was a licensed securities agent and the sole proprietor of a company called Innovative Concepts.

Through this company, Knepp sold certificates on commission which were issued by Premier Benefit Capital Trust ("Premier"). The funds generated by these certificates were used to purchase accounts receivable for a sum less than the face value of the accounts. The certificates were to mature in nine months with a 12% rate of return. Collection of the accounts receivable allowed Premier to repay the purchase price plus the 12% return to the purchasers. Neither the Plaintiff, nor Premier, believed the certificates to be securities as defined by state or federal law.

In the spring of 1993, Knepp and Premier advertised the certificates in several newspapers. At some point following this publication, Defendant Klein initiated an investigation into the sale of these certificates believing the certificates to be securities. Then, sometime in May, Premier was given the opportunity to show why the certificates were not securities or were exempt. On May 19, 1993, the Pennsylvania Securities Commission issued a Summary Order to Cease and Desist against Knepp to stop soliciting and selling the certificates to Pennsylvania residents.[1] On or about May 20, 1993, Defendant Lane issued a news release in several newspapers including the *Philadelphia Inquirer* stating that "Delaware Valley Residents [had been] Solicited Illegally for [an] Unregistered Investment." On May 21, 1993, Knepp was sent a letter from Defendant Cummings enclosing the cease and desist order and on May 22, 1993, the news release naming Knepp was published in the newspaper.

In the following months, Plaintiff was issued a subpoena and an Order to Show Cause advising him of the penalties if it was determined that he violated the law. One suggested penalty was the suspension of his registration; however, it was never actually suspended. Additionally, Defendants filed reports with the National Association of Se-

---

1. A cease and desist order is only preliminary and Knepp was entitled to request a hearing, which he did not request. Thus, the order became final 30 days from its issue date.

The United States Securities and Exchange Commission also obtained a Temporary Restrain-

ing Order against Premier in the United States District Court for the Middle District of Florida ordering the sale of the certificates to stop nationwide as of July 2, 1993.

curities Dealers and hired an investigator, Defendant Carroll, to contact customers.

Plaintiff alleges that the Defendants have conspired against him in a plan to destroy his ability to conduct his business in the Commonwealth of Pennsylvania. He asserts it is their goal to prevent him from earning a living. Further, according to Plaintiff, there is a bias toward him and the same action has not been taken against others. Defendants admit that the same action has not been taken against others selling similar instruments because they claim no knowledge of others within the Commonwealth selling similar instruments. Plaintiff asserts that these actions have deprived him of equal protection of the laws and denied him due process of law in contravention of the Fourteenth Amendment to the Constitution.

Defendants have asserted seven arguments in support of their motion for judgment on the pleadings, including: (1) Defendants are not amenable to suit in their official capacity; (2) no equal protection or due process violation occurred; (3) if there was a violation, Plaintiff's claims are not yet ripe; (4) this Court should abstain from exercising jurisdiction; (5) Plaintiff's section 1985 claim is not viable; (6) Defendants are entitled to absolute immunity; and (7) Defendants are entitled to qualified immunity. We will first address whether or not Plaintiff has stated a claim under the equal protection or due process clauses. Whether Plaintiff has stated a claim for relief under the equal protection clause or the due process clause can be resolved as a matter of law. Based on the following analysis, this Court finds that Plaintiff can state no set of facts on which to establish a claim under the Fourteenth Amendment. Thus, Defendants are entitled to judgment on the pleadings, and it is unnecessary to address Defendants' remaining arguments.

## II. *DISCUSSION*

### A. **Due Process**

■ In order to state a claim under the Due Process clause, a plaintiff must demonstrate that a protected interest was deprived or seriously impinged without the requisite due process. *See Clark v. Township of Falls,* 890 F.2d 611, 617 (3d Cir.1989). "[W]hether there is a protected interest sufficient to trigger constitutional protection is an issue of law." *Id.* Because we find that no property or liberty interest requiring due process of law was deprived or seriously impinged, we need not reach the question of whether plaintiff was accorded due process.

■ Property interests are not created by the Constitution. Instead, these rights come from "independent sources such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The law is well settled that a license is a protected property interest which can not be deprived without due process of the law. *See Mackey v. Montrym,* 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979) (driver's license); *United States v. Martinez,* 905 F.2d 709, 713 (3d Cir.) (medical license), *cert. denied,* 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990). Thus, it follows that Knepp could not be deprived of his securities dealer license without due process of law. It need not be determined, however, whether or not Knepp was accorded due process because he was not denied the use of his securities license. The license was not revoked and he may still sell securities that he is authorized to sell under the license.·

■ The gravamen of Knepp's complaint is that the acts of the Defendants so destroyed his reputation through the allegedly defamatory news release and the investigations of his customers that he can no longer do business under his securities license. Thus, Knepp claims, he has been denied the liberty of his good reputation without due process of law. However, reputation alone is not a protected liberty interest under the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Eberts v. Wert,* No. 92–CV–3913, 1993 WL 304111, 1993 U.S.Dist. LEXIS 10932, at *9 (E.D.Pa. Aug. 6, 1993). Defamation may be actionable under section 1983 only if another recognized right is being substantially altered or extinguished as a result. *Clark,* 890 F.2d at 619. "Defamation, by itself, is a tort actionable under the

laws of most States, but not a constitutional deprivation." *Siegert v. Gilley,* 500 U.S. 226, ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).

 Employment termination or extinguishment of the right to use a license may be a deprivation which, when combined with injury to reputation, states a cause of action under the due process clause. *See Paul,* 424 U.S. at 710–12, 96 S.Ct. at 1164–65. In the instant case no such deprivation has taken place.

In *Paul v. Davis,* the facts were very similar to those of Plaintiff's case. In that case, the plaintiff's photograph had been included in a flyer which listed active shoplifters and was circulated to businesses by local police chiefs. At the time of circulation, plaintiff had not been convicted and the charge was later dismissed. *Paul,* 424 U.S. at 695, 96 S.Ct. at 1158. Although this information reached the plaintiff's employer, he was not fired. Nevertheless, the plaintiff brought a suit under 42 U.S.C. § 1983 alleging that his due process rights had been violated because his reputation and opportunity for future employment had been harmed. *Id.* at 696–698, 96 S.Ct. at 1158–59. The Court in *Paul* held that there had been no deprivation of a protected liberty or property interest which implicated the due process clause. The Court distinguished the facts in *Paul* from a situation where an employer had fired or failed to rehire a plaintiff who then claimed a liberty interest had been violated due to the stigmatization. *Id.,* 424 U.S. at 709–10, 96 S.Ct. at 1164–65 (citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Thus in *Paul,* the Court declined to find defamation actionable because it did not occur in conjunction with the termination of employment. *Id.,* at 710, 92 S.Ct. at 1165. Accordingly, "[t]he possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by *Paul.*" *Clark,* 890 F.2d at 620.

 Similarly, Knepp continues to have the right to full use of his license to sell securities. The only potential damage is to his reputation and not to his rights as a licensee. He has not been deprived of em-

ployment or the right to earn a living any way he chooses. Although this right may be hampered by the alleged injury to his reputation, the injury does not, by itself, rise to the level of deprivation of a liberty or property interest requiring due process of law under the Fourteenth Amendment.

## B. Equal Protection

 Plaintiff asserts that he has been deprived equal protection of the laws because he has been singled out and others similarly situated have not been treated the same by the Pennsylvania Securities Commission in enforcing the registration requirements of that agency. However, "[t]he conscious exercise of some selectivity in enforcement is not in itself a Constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Traditional equal protection standards require a showing that the system of enforcement had a "discriminatory effect" and was "motivated by a discriminatory purpose." *Wayte v. United States,* 470 U.S. 598, 609, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547, (1985) (citing *Personnel Adm'rs of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). In order to state an equal protection claim for unequal or discriminatory enforcement the party claiming such discrimination must show that "persons similarly situated" have not been treated the same and that "the decisions were made on the basis of an unjustifiable standard 'such as race, religion, or other arbitrary classification' or to prevent the [party's] exercise of a fundamental right." *Government of the Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986) (quoting *Oyler,* 368 U.S. at 456, 82 S.Ct. at 506) (additional citations omitted). *Accord FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992); *E & T Realty v. Strickland,* 830 F.2d 1107, 1113 (11th Cir.1987) (misapplication or selective enforcement of facially neutral legislation requires "a showing of intentional discrimination"), *cert. denied,* 485

**1222**

U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988).

Taking the facts in the light most favorable to Plaintiff, it is possible that a set of facts may be proven which show that others similarly situated were not treated the same and that Defendants were selective in choosing to target Plaintiff as selling these purportedly unregistered securities. This, however, is not enough to state a claim under the equal protection clause. To withstand this motion for judgment on the pleadings, it must be shown that a reasonable jury could find that there was purposeful discrimination predicated on an unjustifiable standard or intent to prevent Plaintiff from exercising a protected fundamental right.

 This Court has already determined, as outlined above, that Plaintiff has not been foreclosed from the exercise of any protected right. Further, Plaintiff has not alleged, nor does this Court find, any racial, religious or other class that Plaintiff is a member of that was the target of Defendants' selective enforcement. The Seventh Circuit was faced with a similar set of facts in a case where an arrestee who turned out to be innocent brought suit against police officers alleging to be a member of the class of innocent people in society. *Albright v. Oliver*, 975 F.2d 343, 344, 348 (7th Cir.1992), *aff'd*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1993). The court found the assertion preposterous, stating that even if the innocent could be deemed a protected group, there still must be a showing that the party was singled out because he was a member of the group. It is unlikely that the police had "a perverse desire to punish the innocent." *Id.* at 348. Likewise, the court found it unlikely that the police had it in for persons named Albright (the name of the arrestee). Finding no cause of action under the equal protection clause, the court found the claim properly dismissed. *Id.*

The instant case is analogous to *Albright.* Absent allegations of purposeful discrimination toward a protected class, Plaintiff's complaint does not state a claim as a matter of law. Although plaintiff may have been singled out, it was not because of his membership in any protected class. Accordingly,

this Court finds that a jury could not reasonably find an equal protection violation.

### III. *CONCLUSION*

Since this Court finds that Plaintiff has not stated a claim for an equal protection or due process violation, Defendants' motion for judgment on the pleadings will be granted. Further, there is no need to address Defendants' other arguments in support of its motion.