Sandra HOMAN and Kevin Scott, Plaintiffs,

v.

CITY OF READING, Board of Health of the City of Reading and Council of the City of Reading, Defendants.

Civil Action No. 96–7782.

United States District Court, E.D. Pennsylvania.

May 20, 1997.

Robert T. Vance, Jr., Philadelphia, PA, for plaintiffs.

David J. MacMain, Michael J. Tierney, Montgomery, McCracken, Walker & Rhoads, L.L.P., Philadelphia, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiffs Sandra Homan and Kevin Scott ("Homan" and "Scott" respectively, or "Plaintiffs" collectively) have brought this action against Defendants City of Reading (the "City"), Board of Health of the City of Reading (the "Board"), and Council of the City of Reading (the "Council") seeking compensatory and punitive damages and injunctive relief pursuant to 42 U.S.C. §§ 1982 and 1983. Before the Court is Defendants' Motion to Dismiss pursuant Federal Rule of Civil Procedure 12(b)(6) and for leave to seek attorney's fees and costs pursuant to 42 U.S.C. § 1988 and/or Federal Rule of Civil Procedure 11. Plaintiffs stipulate to the dismissal of the Board, the Council and Count II of the Complaint. We thus resolve the Motion only insofar as it seeks the dismissal of Counts I, III and IV against the City and leave to seek attorney's fees.

## BACKGROUND

Plaintiffs allege the following facts. Homan, a Caucasian woman, and Scott, an African–American man, have lived together as common law husband and wife for the past nineteen years. City officials have been aware of this relationship at all times relevant to this action.

Sometime prior to May, 1996, Scott purchased the property at 1112–1134 Moss Street, Reading, Pennsylvania, at a tax sale and had the deed recorded in Homan's name. Scott remains the "beneficial owner" of this property. Compl., ¶ 4. On May 25, 1996, the building (the "Warehouse") located on the premises was substantially destroyed in a fire. On or about May 29, 1996, Homan was served with notice (the "Board Order") that the Council, acting as the Board, had declared the Warehouse a public nuisance and directed that the structure be rehabilitated or demolished within thirty days. That same day, Homan was also served with notice that Ronald E. Miller, Director of Community Planning, Programming and Development, had determined that the Warehouse constituted a public nuisance. On June 3, 1996, Homan, through her counsel, appealed both decisions.

Shortly after the receipt of both notices, Scott attempted to gain access to the Warehouse property in an effort to demolish the remaining structure and to clear the site of rubbish and debris. Scott, however, was "denied access to the Warehouse property by the City." *Id.* at ¶ 15. When he finally gained access to the property on June 27, 1996—two (2) days before the expiration of the thirty day abatement period—Scott hired a fence contractor to install a fence around the property and rented dumpsters for the debris from the demolition and clean-up. The Reading City Engineer ordered Scott to remove the dumpsters sometime after June 27, 1996. The fence was ordered removed, Plaintiffs allege, by a City official "sometime after June 20, 1996." *Id.* at ¶ 18.

The Council held hearings on Homan's appeals on June 10 and 18, 1996. On July 8, 1996, the Council, "per se and as [the Board]," issued its "Findings of Fact, Conclusions of Law and Decision," in which it sustained Homan's appeal of the Miller Order but denied her appeal of the Board Order.[1] Shortly thereafter, the Council awarded an $87,000 contract to Northeast Industrial Services Corp. to demolish the Warehouse. Demolition was completed in September, 1996. The City intends to recover the cost of demolition of the Warehouse from Plaintiffs pursuant to 53 Pa. Stat. Ann. § 37324. Plaintiffs estimate that the work could have been completed for $10,000, and that they would have done so had the City not prevented them.

Based on this alleged series of events, Plaintiffs claim that the City, through the Board and the Council, violated their rights to procedural due process. Plaintiffs also allege that, in denying them access to the property until June 27, 1996, the City violated their substantive due process rights by discriminating against Scott based on his race and against Homan based on her relationship with Scott. · Thus, in Count I, Plaintiffs seek compensatory and punitive damages pursuant to 42 U.S.C. § 1983 and attorney's fees pursuant to 42 U.S.C. § 1988.

Plaintiffs make the following additional factual allegations in Count III. The City, through its Codes Services Unit, issued three "Non–Traffic Citations" to Homan for city ordinance violations in March and April of 1995. Across the street from Plaintiffs' residence, however, is a building (the "American Chain Building") owned "by a corporation controlled by a White person" which has never been cited for similar ordinance violations or declared a public nuisance despite being "in far worse physical condition than the [Warehouse] prior to the fire." Compl., ¶ 37. Plaintiffs attribute the allegedly differential treatment to "defendants' policy, custom and/or practice of racial discrimination in the enforcement of local law." *Id.* at ¶ 40. Thus, in Count III, they seek compensatory and punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged violations of the Equal Protection Clause of the Fourteenth Amendment.

---

1. The Council ruled that Miller lacked the authority to declare the property a public nuisance.

Finally, Plaintiffs incorporate all of their allegations into Count IV, in which they seek damages and injunctive relief pursuant to 42 U.S.C. § 1982, and attorney's fees under § 1988. We now decide whether Counts I, III and IV state claims upon which relief may be granted.

## DISCUSSION

### I. Standard for Rule 12(b)(6) Motion

In considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

### II. Section 1983 Claims

#### A. Count I: Due Process

##### 1. Procedural Due Process

Our Court of Appeals has instructed that "[t]o establish a cause of action for a violation of procedural due process, a plaintiff [must prove] that a person acting under color of state law deprived [him or her] of a protected property interest [and] that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process." *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir.

1991). A property interest protected by the due process clause results from a " 'legitimate claim of entitlement' created by an independent source such as state law." *Id.* at 679 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). If such a property interest is deprived, due process requires notice and a meaningful opportunity to be heard. *Midnight Sessions*, 945 F.2d at 680. Further, a state provides adequate due process when it " 'affords a full judicial mechanism with which to challenge the administrative decision.' " *Id.* at 680 (citing *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir.1988)).

The City reads Plaintiffs' procedural process claim as challenging the process followed in declaring the Warehouse a public nuisance. The City argues that, given the Board's wide discretion under 53 Pa. Stat. Ann. § 37320 to declare buildings to be public nuisances, Plaintiffs have no protected property interest in not having the Warehouse so declared. Further, even if Plaintiffs did, the City contends that the procedural mechanism available to challenge this determination satisfies the requirements of due process.

In response, Plaintiffs expressly disavow any challenge to the Board's determination that the Warehouse constituted a public nuisance. Rather, their procedural due process claim relates to the alleged denial of access to the property during the thirty day abatement period. Plaintiffs claim that (1) they have a protected property interest in access to the property during the entire abatement period pursuant to 53 Pa. Stat. Ann. § 37320 *et seq.*, (2) the City, through the Board and the Council, deprived them of said access, and (3) Plaintiffs had no opportunity to challenge the denial.[2]

■ We find this theory sufficient to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The procedure

---

2. In its reply brief, the City argues that Plaintiffs' Answer "substantially recharacterizes their claim as one of denial of access to the destroyed factory site during the thirty-day abatement period." Defs.' Reply at 2. The City contends that the lack of access is barely mentioned in the Complaint, that there is no evidence of action on Plaintiff's

part to rehabilitate the site, and that Plaintiffs made merely passing reference to the alleged denial in the June 18, 1996 hearing. We disagree with the City's characterization of the Complaint, however, and find that its additional arguments raise factual questions not material on a motion pursuant to Rule 12(b)(6).

for the abatement of public nuisances in Pennsylvania is outlined at 53 Pa. Stat. Ann. § 37320 *et seq.* The statutes provide in pertinent part as follows:

> Whenever the [Board] shall determine ... that a public nuisance exists ..., it may order the nuisance to be removed, abated, suspended, altered, or otherwise prevented or altered. Notice of such order, bearing ... the number of days for compliance therewith and the alternative remedy of the board in case of noncompliance ... shall be served upon the person, if any, whom the board deems responsible therefor or concerned therein....

53 Pa. Stat. Ann. § 37321. This notice "shall clearly specify ... [t]he date of the board's order and the number of days therefrom allowed for compliance with it." 53 Pa. Stat. Ann. § 37322. Nothing in these provisions grants a board of health any discretion to deny access to the property at any time during the abatement period, nor, of course, is there a mechanism to challenge any such denial. Accordingly, by alleging that they were denied access to the Warehouse for twenty-eight of the thirty days provided for in the Board's Order, Plaintiffs have stated a valid § 1983 procedural due process claim.[3]

### 2. Substantive Due Process

Official action violates an individual's substantive due process right if it is not "rationally related to a legitimate government interest." *Midnight Sessions,* 945 F.2d at 682. A "plaintiff may maintain a claim of substantive due process violation upon allegations that the government deliberately and arbitrarily abused its power." *Id.* at 683 (citing *Bello,* 840 F.2d at 1129).

■ As with the procedural due process claim, the City interprets this claim as concerning the declaration of the Warehouse as a public nuisance, whereas Plaintiffs in fact challenge the alleged denial of access to the property during the abatement period. The Complaint alleges that said denial violated

substantive due process because it was motivated by racial prejudice against Scott and Homan. It is clearly a valid § 1983 substantive due process theory that the City, through the Board and the Council, denied Plaintiffs access to their property based on Scott's race and Homan's relationship with Scott, thereby forcing Plaintiffs to incur to over $75,000 in unnecessary demolition costs.

In its reply brief, the City argues that Plaintiffs have not alleged facts to support the allegation of racial discrimination, but have simply made conclusory and unsupported assertions that are insufficient to withstand a motion to dismiss. This argument may have had considerable force in the time when the Third Circuit imposed heightened pleading requirements for § 1983 claims against municipalities. *See, e.g., Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988). In *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), however, the Supreme Court explicitly rejected this rule, finding it "impossible to square the 'heightened pleading standard' ... with the liberal system of 'notice pleading' set up by the Federal Rules." *Id.* at 168, 113 S.Ct. at 1163; *see also Brader v. Allegheny General Hospital,* 64 F.3d 869, 876–77 (3d Cir.1995). Thus, because Plaintiffs need only make "a short and plain statement of the claim showing that the pleader is entitled to relief," we find their allegations sufficient to withstand the instant Motion. *See* Fed.R.Civ.P. 8(a)(2).

Finally, the City argues that Plaintiffs, in their Answer to the City's Motion, abandon the claim that racial animus motivated the alleged denial of access. Plaintiffs do appear to change course on their substantive due process theory by arguing that the City's allegedly improper motivation was the desire to obtain the Warehouse site for use as a parking lot to service Reading's nearby outlet stores. *See* Pls.' Mem. in Opp. to Mot. at 7–8. We are baffled by this argument as no allegations in the Complaint even remotely suggest such a claim. Should Plaintiffs wish

---

**3.** Count I also includes a second procedural due process theory that the Council and the Board improperly acted in "both a prosecutorial and an adjudicative role with regard to declaring the [Warehouse] a public nuisance after the fire."

Pls.' Mem. in Opp. to Mot. at unnumbered 7; *see* Compl., ¶ 28. The City does not address this theory in its Motion, thus we do not decide at this time whether it constitutes a valid claim.

to abandon their allegations of racial discrimination and raise this altogether distinct substantive due process claim (the merits of which we do not pass on at this time), Plaintiffs must amend their Complaint accordingly. Considering only the Complaint in its present form, we find that it states a substantive due process claim upon which relief may be granted.

### B. *Count III: Equal Protection*

■ Plaintiffs' equal protection claim is premised on a theory of "selective enforcement." A plaintiff may recover on such a claim when it is established that:

> (1) the person, compared with others similarly situated, was selectively treated, and
>
> (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995); *see also Government of Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986); *Knepp v. Lane,* 848 F.Supp. 1217, 1221 (E.D.Pa.1994). Plaintiffs allege that the City, through its Codes Services Unit and pursuant to a policy and custom of racial discrimination, improperly singled Plaintiffs out based on race by (1) enforcing city ordinances before the fire, (2) declaring the Warehouse property a public nuisance after the fire and (3) not treating the white owners of the American Chain Building in a similar manner.[4]

The City moves to dismiss this claim on the ground that there is no evidence in the "undisputed factual record" to "establish the requisite intentional discrimination to make out an equal protection racial discrimination claim." Defs.' Mem. in Supp. of Mot. at 24, 26–27. The City notes (1) that Homan, in whose name the deed to the property is recorded, is white, and (2) that there is no evidence that Scott ever appeared at any of the hearings or that the Board was aware either that (a) someone other than Homan is associated with the property or (b) Homan is Scott's alleged common law wife. The City contends further that the selective enforcement claim must fail because "different considerations would go into determining the nuisance status" of the Warehouse and the American Chain Building, and because the American Chain Building appears to be a stable structure from photos submitted by Plaintiffs.

■ We find these inappropriate grounds to dismiss a claim pursuant to Rule 12(b)(6).[5] The record is far from undisputed regarding what City officials knew of Scott's relationship with Homan, his alleged "beneficial ownership" of the property, the alleged ordinance violations for which Plaintiffs were cited and the white property owners were not, and the condition of the American Chain Building. For present purposes, we must accept as true Plaintiffs' allegations that their relationship "at all times relevant to this Complaint has been known to defendants" and that this was the basis for the City's discriminatory enforcement of its ordinances. Compl., ¶ 9; *see Schrob,* 948 F.2d at

---

4. In Plaintiffs' response to the City's Motion, they again appear to shift gears. Rather than addressing the allegations of racial discrimination made in the Complaint, Plaintiffs argue that the City "targeted them for enforcement . . . because defendants wanted to obtain the [Warehouse] property" for use as a parking lot. Pls.' Mem. in Opp. to Mot. at unnumbered 9. Thus, "defendants created an irrational distinction between property owners whose properties they wanted to obtain and other property owners." *Id.* Again, we are confounded by this line of argument as it bears no resemblance to the claim alleged in the Complaint. If Plaintiffs wish to modify their claim, they must amend their Complaint accordingly. Until then, we will consider the Complaint in its present form.

5. Indeed, the City relies largely on cases deciding motions for summary judgment pursuant to Rule 56. The only case cited by the City analogous to the instant action both in terms of its facts and its procedural posture is *Wagner v. Township of Harmar,* 651 F.Supp. 1286 (W.D.Pa.1987), *aff'd,* 826 F.2d 1058 (3d Cir.1987). In that case, the court dismissed an equal protection claim based on a township zoning board's handling of permit and variance applications made four years apart. *Wagner* is distinguishable because this case involves allegations of concurrent differential treatment.

1405. Because the City does not elaborate on the "different considerations" that would determine the nuisance status of the Warehouse and the American Chain Building, we do not address this contention. In short, we find Plaintiffs' allegations sufficient to state an equal protection selective enforcement claim.[6]

### III. Count IV: Section 1982 Claim

■ Section 1982 of Title 42 of the United States Code guarantees to all citizens of the United States "the same right ... as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." 42 U.S.C. § 1982. In order to recover under § 1982, a plaintiff must demonstrate an intent to discriminate based on race. See *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616, 107 S.Ct. 2019, 2021, 95 L.Ed.2d 594 (1987); *Lac du Flambeau Indians v. Stop Treaty Abuse–Wisconsin, Inc.*, 991 F.2d 1249, 1257 (7th Cir.1993); *Shipley v. First Federal S & L Ass'n of Delaware*, 703 F.Supp. 1122, 1134 (D.Del.1988) (Roth, J.), *aff'd*, 877 F.2d 57 (3d Cir.1989); *Petrone v. City of Reading*, 541 F.Supp. 735, 739 (E.D.Pa.1982); *DeFrank v. Pawlosky*, 480 F.Supp. 115 (W.D.Pa.1979), *aff'd*, 633 F.2d 209 (3d Cir.1980).

■ The City argues that Plaintiffs' § 1982 claim must be dismissed because "there is not even a hint of evidence to support such an accusation." Defs.' Mem. in Supp. of Mot. at 29. Again, however, such an argument is not persuasive in support of a 12(b)(6) motion when the Complaint's allegations must be accepted as true. The City appears also to contend that Homan's § 1982 claim fails as a matter of law because she is

white. To the extent that the City makes this argument, we reject it. A person need not belong to a protected class to sue under the Fourteenth Amendment or federal civil rights statutes if her claim is that she suffered differential treatment because of her association with a member of a protected class. See, *e.g., Maynard v. City of San Jose*, 37 F.3d 1396, 1402–4 (9th Cir.1994) (affirming jury instructions on § 1983 retaliation claim where district court instructed that, in order to ,find equal protection violation, jury needed to find that defendants retaliated because white plaintiff offered assistance to an African–American individual); *Littlefield v. McGuffey*, 954 F.2d 1337 (7th Cir.1992)(affirming jury verdict under § 1982 to white plaintiff denied rental housing on basis of boyfriend's race); *Novotny v. Great American Federal Savings and Loan Assoc.*, 584 F.2d 1235, 1244–45 (3d Cir.1978)(holding that male plaintiff had standing to raise § 1985(3) claim alleging discrimination against women), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *see also Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404–05, 24 L.Ed.2d 386 (1969). We therefore conclude that Plaintiffs have stated a § 1982 claim upon which relief may be granted.[7]

### IV. Request for Attorney's Fees

■ The City vigorously argues that the instant lawsuit is frivolous. It labels the charges of racial discrimination scurrilous and unsubstantiated and questions Plaintiffs' motives in filing the suit. The City therefore requests attorney's fees pursuant to 42 U.S.C. § 1988 and/or Rule 11 of the Federal Rules of Civil Procedure.[8] Clearly, because

---

**6.** The City points to Homan's racial identity as evidence that the City did not discriminate against her. The City does not argue here that Homan's equal protection claim fails as a matter of law because she·is white. The City does appear to raise this argument in the § 1982 context, however, so we address it in our discussion of that claim.

**7.** The City does not argue that Scott's § 1982 claim fails as a matter of law because he is merely the alleged "beneficial owner" of the property. We therefore do not address this argument at this time.

**8.** Section 1988 provides that "[i]n any action or proceeding to enforce a provision of section ... 1982 [or] 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Supreme Court has limited this discretion to instances where the plaintiff's claim is "frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978); *Commonwealth of Pennsylvania v. Flaherty*, 40 F.3d 57, 60 (3d Cir.1994). Attorney's fees should not be granted simply because the civil rights plaintiff

**492**

we have denied the City's Motion to Dismiss, no attorney's fees may be awarded at this time. We have limited our analysis, however, to whether the allegations themselves state claims upon which relief may be granted. We have not considered the factual basis for the allegations. The City is therefore not prejudiced from seeking to recover fees if we subsequently determine that the claims are as groundless and objectively unreasonable as the City now contends.

### CONCLUSION

For the foregoing reasons, we dismiss Count II, the Council, and the Board, and we deny the Motion in all other respects. An appropriate Order follows.

### ORDER

AND NOW, this 20th day of May, 1997, upon consideration of Defendants City of Reading, Board of Health of the City of Reading and Council of the City of Reading's Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Answer, and the Reply and Sur–Reply thereto, it is hereby ORDERED in accordance with the attached Memorandum that the Motion is GRANTED in PART and DENIED in PART as follows:

(1) that Defendants Board of Health of the City of Reading and Council of the City of Reading are hereby DISMISSED from this action;

(2) that Count II of the Complaint is DISMISSED with PREJUDICE;

(3) that the Motion is DENIED in all other respects;

(4) that Defendant City of Reading shall file its Answer within twenty (20) days of the date of entry of this Order.

lost the case. *See Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

Rule 11 sanctions are also not appropriate merely to punish the unsuccessful litigant. *See Teamsters Local Union No. 430 v. Cement Exp., Inc.,* 841 F.2d 66, 68 (3d Cir.1988). Rather, this rule "imposes a duty on counsel to make an inquiry into both the facts and the law which is 'reasonable under the circumstances.'" *Zuk v. E.P.P.I. of the Medical College of Pennsylvania,* 103 F.3d 294, 299 (3d Cir.1996). This objective standard of reasonableness does not require bad faith. *Id.*